JACKSON, ex dem. William Ellice, and others *vs.* BRITTON.

Where premises demised by a lease were described by distances from a giv-
en corner, and were bounded on one side by a lot described as of a parti-
cular number, and a diagram of the demised premises described an obtuse
angle, leaving a gore between the angle and the lot specified as a bound-
ary, it was held that *parol evidence* was admissible to shew the intent of
the parties to cover as well the gore as the premises included within the
distances, although there were no natural or artificial objects to control or
regulate the courses and distances.

An offer to purchase land by a party having the title, does not impair or af-
fect his right. Such offer, however, by a party bars the defence of adverse
possession.

One of two attornies executing a deed may prove the execution of it by him-
self, but not by his co-attorney where there is a subscribing witness to the
deed.

*Aliens* authorised by statute to hold lands, but inhibited from leasing or de-
mising the same, are not precluded from making a demise for the purpose
of bringing an ejectment.

THIS was an action of ejectment, tried at the Herkimer
circuit in September, 1828, before the Hon. NATHAN WIL-
LIAMS, one of the circuit judges.

The plaintiff produced a lease from Alexander Ellice, the
ancestor of the lessors of the plaintiff, to the defendant, bear-
ing date October 3d, 1796, demising to the defendant· in fee,
subject to an annual rent of $6, a lot in the village of Little
Falls described as "lot No. *one* on Catharine-street, being
110 feet in front, and 39 feet in rear, and 120 feet in depth ;
bounded on the east by lot No. *two* in Catharine-street, on
the south on Catharine-street, and on the west on Ann-
street," and proved the defendant to have been in possession
since the date of the lease.   It was admitted that the defend-
ant was in possession of a triangular piece of ground lying
east of and adjoining to the premises described in the lease,
(locating such premises by courses and distances) which, to-
gether with the premises described in the lease, formed an
area of 120 feet square, having 120 feet on Catharine-street
and 120 feet on Ann-street, which the plaintiff claimed to re-
cover in this cause.   John R. Bleecker, a witness for the
plaintiff, testified that he, together with Barent Bleecker, were

the agents of the lessors of the plaintiff; that they succeeded one William Alexander, who died in 1813; that shortly after his death, the defendant informed the witness that he had agreed with Alexander for the purchase of the premises in question, and that he was then ready to pay the money and to take a conveyance; witness postponed giving an answer; that five or six years since he told the defendant he was ready to give the conveyance, who agreed to accept it, but he claiming interest on the sum agreed to be paid from the time of the first proposition to purchase, and the defendant refusing to pay such interest, no conveyance was executed. The plaintiff rested. The counsel for the defendant insisted that the lease covered the premises in question. The judge decided that it must be controlled by the distances given, and that the plaintiff was entitled to recover. It having appeared by the testimony of Mr. B. that the lessors of the plaintiff were *aliens*, it was objected that they were incapacitated from making a demise of real estate, and that consequently the action of ejectment founded on a demise from the lessors to the nominal plaintiff could not be maintained. This objection was also overruled.

On the part of the defendant it appeared, that in 1809 a map of the village of Little Falls was made by a surveyor by the direction of the ancestor of the lessors of the plaintiff; that lot No. *one* on the corner of Catharine and Ann-streets, was laid down on that map as comprising a square of 120 feet; that the other lots in the village had generally a front of 60 feet, and were 120 feet in depth; that two lots lying directly north of the said lot No. one, and designated as lots Nos. 1 and 2 on Garden-street, were each 60 feet wide, and the rear of the two lots, as laid down on the map, corresponded in width with the rear of the said lot No. one. The defendant then produced a lease, purporting to be executed by the lessors of the plaintiff by their attorneys, B. & J. R. Bleecker, to the defendant, bearing date 20th March, 1810, demising lots Nos. 1 and 2 on Garden-street, and lot No. two on Catharine-street, the two first lots being described as bounded on the south by lot No. one in Catharine-street, and lot No. two being described as bounded westerly by lot No.

one, and as containing on the west bounds thereof 120 feet,
and offered to prove the execution thereof by the attorney
John R. Bleecker, which proof was objected to; the objec-
tion was overruled as it regarded the proof of the execution
by himself, and he testified that he executed it as the attor-
ney of the lessors of the plaintiffs. It was then objected that
he should not prove the execution thereof by the other at-
torney, as there was a subscribing witness, and the objection
was sustained. It was shewn that the power to the attornies
was joint and several, upon which the witness testified that
the lease thus produced by the defendant had never been
delivered to his knowledge ; it was not executed by the de-
fendant, nor was the counterpart, which the witness stated
was in his possession. The defendant offered to read the
lease in evidence, but was not permitted by the judge. The
defendant then proved the payment of rent to the sub-agent
of the lessors of the plaintiff for lots Nos. 1 and 2 on Gar-
den-street, and for lot No. two on Catharine-street, in 1820,
the receipt for which acknowledged the payment to be in full
of arrearages of rent, and a similar receipt given in 1821 was
also produced ; the rent upon each lot being $3 per annum,
which was the sum reserved in the lease of 1810. The de-
fendant again offered to read in evidence the lease of 1810,
but was again overruled. The jury, under the charge of the
judge that the case turned upon questions of law and that
the plaintiff was entitled to recover, found a verdict for the
plaintiff, which was now moved to be set aside.

*A. Loomis & B. F. Butler*, for the defendant.

*A. Van Vechten*, for the plaintiff.

*By the Court*, MARCY, J. The general rule of law that
in settling boundaries, natural or artificial objects are to con-
trol courses and distances, is not disputed. These objects con-
trol, it is admitted, because they are most certain; but it is
supposed by the plaintiff in this case that the rule ought not
to apply if the course or distance is certain, and the natural
or artificial monument referred to in the deed is uncertain.
There is no conflict about the boundaries on the west, south

NEW-YORK, and north of lot No. one on Cathariue-street, to which the
May, 1830. defendant has title, and within which he contends the pre-
Jackson    mises in dispute are embraced.  Whether they fall within
v.       this lot or not depends upon the place where its eastern
Britton.   boundary is fixed.  The language of the lease is satisfied as
to its designation of distance, by giving the lot 110 feet as a
front along Catharine-street, and 30 feet in the rear, but as
to its eastern boundary it is not satisfied without extending it
to lot No. two.  Lot No. two is an artificial boundary, and
where its western limit was at the date of the lease is said to
be now a matter of uncertainty.  No map made previous to
1809 was produced on the trial, on which these lots were laid
down.  On a map of that date made for the ancestor of the
lessors of the plaintiff, lot No. one on Catharine-street, if
bounded by lot No. two on the east, as the lease declares it
to be, would include the premises in dispute.  There can be
no gore between lots No. 1 and 2 on Chtharine-street, be-
cause the defendant's lease for No. one, is bounded on No.
two.  The defendant has a right to extend his lot to No. two,
notwithstanding the distance specified in the lease.  It is to
be presumed that the location of lot No. two was as certain
when the lease was made as that of No. one ; and if it was
certain, it is not a matter of dispute that it fixed the eastern
boundary of lot No. one, regardless of the distances mention-
ed in the lease.  It does not seem to me correct to say, that
when the location of lot No. 2 was known, it controlled and
prevailed over the distance ; but now, when this location has
become a matter of dispute, perhaps of doubt, it is to be
disregarded in fixing the extent of lot No. 1, and distance
alone is to be looked to in settling that question.  Course and
distance may be, and indeed almost always are material ev-
idence to shew the place of the artificial bounds of a tract of
land referred to in a deed.  If there had been no evidence
other than the lease in this case, and the undisputed boundary
on Catharine and Ann-streets, the premises in question must
have been considered as a part of lot No. 2 ; but there was
evidence going to shew that they were embraced in lot No. 1.
This evidence should have been submitted to the jury, and
the question of location left to their determination.

If the defendant can shew that his lease for lot No. 1 includes the premises, his title under it is not impaired or affected by any negociations had by him with the agents of the lessors of the plaintiff for the purchase of them. What passed, however, between him and those agents, if it related to the land in dispute, would, I think, be conclusive against any claim founded on adverse possession.

It is unnecessary to consider the exception to the decision of the judge excluding the lease of the other lots in the village of Little Falls, because a new trial must he granted for the misconstruction of the deed, and the defendant will have an opportunity to supply what the judge thought, and in my opinion correctly, a defect in the proof of its due execution.

The lessors are *aliens*, and though allowed by statute to hold real estate, are inhibited to lease or demise it. The statute could not have contemplated the case of a fictitious lease required in the action of ejectment. Such a construction would defeat its very object. To allow aliens to hold real estate, and at the same time deprive them of all remedy to maintain their rights to it, would be little better than mockery. If dispossessed, they could not, under the law as it existed at the time this permission to hold real estate was given, recover their property without making, or rather being supposed to make a lease. Fiction is resorted to for the purpose of advancing right, but is not allowed to take the place of reality to defeat it. In point of fact, there has been no leasing or demising in this case. The very case which was adduced on the argument to support the objection to the action, (11 Johns. Rep. 418,) appears to me to do it away. In that case there was no objection to the demising to James Jackson, nor to *alienism* alone; but the objection was to the maintenance of the suit by the lessors, they being *alien enemies* when it was commenced. The court did not decide that the right to prosecute did not exist, but said it was suspended during the war.

Motion for new trial granted.