<div style="text-align:center">TYMASON <i>vs.</i> BATES.</div>

An *action of covenant* for breach of the covenants of *seisin* and *quiet enjoy-ment* will not lie for the *eviction* of a grantee from lands taken possession of by him under his deed, when the premises granted are described as a *specific lot* in a *certain tract or patent*, and the lands lost are not embraced in such description.

*Parol evidence* is inadmissible to show, that the lands lost are comprised with-in certain limits, designated by the grantor in the *negotiation* previous to the conveyance as the boundaries of the lot, where the premises from which the plaintiff is evicted are not in fact embraced in the description of the premises contained in the deed.

ERROR from the supreme court. Bates sued Tymason for breach of the covenants of *seisin* and *quiet enjoyment,* contained in a deed of 128 acres of land, executed by Tymason to one Calvin May, on the 30th May, 1812; Bates being the *assignee* of the covenants, in consequence of sundry mesne conveyances of the same premises, which are described in the deed as follows : " All that certain piece or parcel of land, situate, lying and being in the town of Cherry Valley, in the county of Otsego and state of New-York, known and distinguished as the farm or subdivision No. *one,* of lot No. *sixty,*

ALBANY, Dec. 1835.

Tymason v. Bates.

in the division of that tract of land which was granted by letters patent unto *Philip Livingston* and others in the year 1761; which said lot No. 60 was subdivided in the year 1794, by John Andrus, surveyor; and the southerly moiety or half part thereof, distinguished as the subdivision No. *one*, begins *at the south-east corner of the said lot No.* 60, *in the line of Lindsey and Roseboom's tract*, and runs thence, as the needle pointed when the said large tract was divided, north 38 degrees 12 minutes east 30 chains and fifty links to a crooked beach tree marked 1, 2; thence north 51 degrees 48 minutes west 42 chains, to the bounds of lot No. 59, of the same tract—an iron-wood sapling and a bass-wood tree near it marked 1, 2; thence along the bounds of said lot 59, south 38 degrees and 12 minutes west 30 chains and 50 links, to the south-east corner of said lot 59, *in the line of said Lindsey and Roseboom's tract aforesaid;* thence *along said line* south 51 degrees 48 minutes east 42 chains, to the place of beginning; containing 128 acres of land." On the trial of the cause it was proved that in May, 1830, a judgment was recovered against Bates, in an action of ejectment commenced against him by George Clarke and Josiah Stearns, whereby he lost about 19 acres of the land of which *May* had taken possession under his deed. That in that action Clarke and Stearns proved that the *north* line of the *Lindsey and Roseboom tract* was *five chains and ninety links* north of the line which has been claimed by Bates as the *south boundary* of the *Livingston patent*, and up to which he had held possession, and that they were the owners of the property in question under the *Lindsey and Roseboom* patent, or as it was commonly called, the *Cherry Valley patent*. *May* was then called as a witness by the plaintiff, and after being *released* by him and by the intermediate grantees, was admitted by the circuit judge to testify, although objected to by the defendant; and he did testify that *during his negotiation* with Tymason for the purchase of the 128 acres, Tymason showed him an *oak tree*, which he alleged to be *the south-east corner of lot No.* 60, and pointed out a line running from thence west, consisting of a *tree fence* and *marked trees*, which they traced until within 12 chains of the western boundary of lot No. 60. The line

thus pointed out was the line proved in the action of ejectment to be five chains and ninety links south of the true division line between the *Livingston patent* and the *Lindsey and Roseboom patent.* It was further proved, that at the time of the trial of the ejectment suit, *Tymason* himself expressed the belief that the line running west from the *oak tree* spoken of by *May* was the true division line between the two patents. After the plaintiff had shown an *eviction* under the judgment in ejectment, the defendant moved for a nonsuit, on the ground that the plaintiff had *not shown an eviction from any lands in the Livingston patent.* The circuit judge granted the nonsuit, which, on application to the supreme court, was set aside, and a new trial ordered. On the second trial the *plaintiff* obtained a verdict. The defendant then moved for a new trial, which was denied, for the reasons assigned by the supreme court in setting aside the nonsuit, which see in 13 *Wendell*, 303, *et seq.* Judgment was accordingly entered upon the verdict, and the defendant, on a bill of exceptions presented by him at the circuit, sued out a writ of error, removing the cause into this court. For a more particular statement of the facts, the case in 13 *Wendell* and the opinions delivered in this court are referred to. The cause here was argued by

*S. Stevens & K. Miller*, for the plaintiff in error.

*A. Taber & J. D. Hammond*, for the defendant in error.

The following opinions were delivered:

By the CHANCELLOR. The question to be determined in this case is, not what land Tymason intended to convey to Calvin May by his deed of November, 1812, but what land is actually covered by the description and boundaries contained in the deed itself. The land conveyed by Tymason was deeded to him by the same description, word for word, by the deeds of John Jay and others, in March, 1808; and it was afterwards conveyed, by the same description, in the deed from May to Hammond, and in the subsequent conveyances to Phenis and Bates. As Bates claims the right to recover,

ALBANY, Dec. 1835.

Tymason v. Bates.

through those deeds, as the assignee of a covenant running with the land which was covered by the deed to himself, it is evident he cannot recover in this suit, unless the land of which he has been evicted in the Cherry Valley patent is actually embraced within the description in the deed to himself, and in all the intermediate conveyances through which he claims; and if it is embraced in the descriptions in those deeds, it is also embraced in the deeds from Jay and others to Tymason—as it is not pretended that there are two different parcels of land to which the description is applicable. In this view of the case, it is impossible for me to discover upon what principle May's testimony could be received as legal evidence to support the plaintiff's action. If Tymason pointed out to him a particular piece of land as that which he was about to sell to him, and took a price for it accordingly, and afterwards conveyed to him by a description which did not embrace the land thus pointed out, it might be a sufficient ground for reforming the deed in the court of chancery, if he was the owner and had the right to convey the land thus pointed out, so that the legal title to it might pass to the purchaser under the reformed conveyance; and if he was not the owner, the court of chancery might decree the money to be refunded, or at least so much of it as would compensate for the difference in value between the land contracted for and that which was conveyed by the deed. But no action of covenant could be maintained in a court of law, even as between the immediate parties to the conveyance, for a failure of title to land not actually embraced therein. Much less could a subsequent grantee of the purchaser maintain an action upon a covenant of warranty in the conveyance; for, to enable a subsequent grantee to maintain an action upon the warranty in a previous conveyance, as a covenant running with the land, the description of the premises in the deed to himself, as well as in the deed in which such covenant of warranty is contained, must be such that it would have conveyed to him the legal title to the land of which he has been evicted, if the grantors in the several conveyances through and under which he claims, had been the owners thereof; and if Calvin May, at

the time of his conveyance to Hammond, had been the owner of the whole of the Cherry Valley patent, is it possible to suppose that any thing south of the north line of that patent would have passed by the description contained in the deed to his grantee? Our recording acts would afford no protection whatever to subsequent purchasers, if the abuttals and boundaries contained in written conveyances should be considered as referring merely to what was supposed by the immediate parties to be the land described in the deed. If this were the case, the purchaser of lot No. 1 in a particular tract, who had searched the records and found that the grantor had only conveyed No. 2 in that tract, would lose his farm upon parol proof that, at the time the deed for No. 2 was given, lot No. 1 was pointed out to the purchaser as the land which he was about to convey, and that both parties to that conveyance at that time actually supposed it was the lot described in the deed as lot No. 2. The description in a deed refers to matters which are supposed to be well known to others; so that any other person, as well as the immediate parties to the conveyance, can, by proper inquiries, locate the premises from the description in the deed, with reference to matters of public notoriety—as to deeds, or maps, or marks upon the land. If lot No. 1 is conveyed in a particular tract, it is only necessary to inquire and ascertain from residents in the neighborhood, or other authentic sources of information, where lot No. 1 is, and how it is bounded; and it is not necessary to look any further, unless it is found that there are two lots of that name, or there are other boundaries contained in the deed, which apply to some other lot, and not to No. 1. But if such a latent ambiguity exists, the person who wishes to locate the premises described in the conveyance, or to ascertain whether a piece of land which he is about to purchase has already been conveyed or encumbered, must refer to certain legal rules of construction, or make further inquiries, for the purpose of ascertaining which of the two pieces to which the different descriptions in the deed relate, was the one actually conveyed. That was the case in *Jackson* v. *Loomis*, 18 *Johns. R.* 81, where the mortgage was for lot No. 51; but the cour-

ALBANY, Dec. 1835.

Tymason v. Bates.

ses and distances and fixed monuments which were given in the mortgage were in fact the known boundaries of lot No. 50. In that case the number of the lot was rejected as a false and mistaken call, and the fixed monuments, together with the courses and distances, were of themselves sufficient to enable a person to locate the land intended to be conveyed by the mortgage. But in this case, if the calls in the deed, by which the land would be located as Tymason's counsel contended it should be, are rejected as false and mistaken, there is no land described in the deed which could ever be located. The first call that must be rejected is, "subdivision No. 1 of lot No. 60, in the division of Livingston's patent, which lot No. 60 was subdivided in the year 1794," as the premises of which the plaintiff was evicted are no part of lot No. 60 in Livingston's patent; and no person testifies that he ever heard it called by that name. This call, therefore, agrees with the defendant's location, but not with the plaintiff's. The residue of the description is a statement of the boundaries of the subdivision No. 1, in lot No. 60, in Livingston's patent, which actually extended to the true line of Lindsey and Roseboom's tract, as described in the deed: but neither the south-east corner of lot No. 60, nor the line of *Lindsey and Roseboom's tract*, is at the oak tree which some of the witnesses supposed to be the *line of the Cherry Valley patent;* but they are both at the point where the defendant insists the first line and course in his deed commences. I do not understand that any of the witnesses ever heard the oak tree called the south-east corner of lot No. 60, or the line running therefrom the line of Lindsey and Roseboom's tract; but it turns out that the Cherry Valley patent and that tract were the same. And we shall certainly be going full far enough, if we retain the description of the line, and reject the south-east corner of lot No. 60 as a false or mistaken boundary. We must also reject the crooked beach marked 1, 2, at the termination of the first course, and the ironwood sapling and basswood tree marked 1, 2, at the termination of the second course, which never did correspond with the plaintiff's location, and which his counsel now insist cannot be found.

When these are all rejected, the courses and distances and the southeast corner of lot 59 in the line of Lindsey and Roseboom's tract, from which the east course in the deed runs south 51 deg. 48 min. east to the place of beginning, would still correspond much better with Tymason's location of the land than with the plaintiff's. And as there is no dispute as to where the third course in the deed terminated at the southeast corner of 59, where the Cherry Valley line was run and marked according to its true location, a line running from there to the oak tree must have run diagonally across the piece of land of which the plaintiff was evicted. He has then been permitted, by the misdirection of the judge at the trial, to recover for more land than was embraced in the boundaries in the deed, even if the descriptions above referred to as the place of beginning are wholly rejected, and the oak tree itself is substituted in lieu thereof. It is impossible, therefore, to make this description cover any land south of the Cherry Valley line, without doing violence to all rules of construction by which conveyances of land have hitherto been governed; and taking the true line of Lindsey and Roseboom's tract as the place of beginning, there is no ambiguity whatever in the case, even if there never was a crooked beach tree at the end of the first course, or an ironwood sapling in the line of lot No. 59, at the termination of the second course. The plaintiff, then, has been permitted to give parol evidence inconsistent with the deed, for the purpose of creating a latent ambiguity, and to substitute parol declarations of the grantor to contradict the express terms of the deed itself. In *Linscott* v. *Fernald*, 5 *Greenl. R.* 503, C. J. Mellen says, "It has often been decided by other courts, as well as by this court, that where there are no monuments referred to in a conveyance, or if they are gone and the place where they originally stood cannot be ascertained, the courses and distances mentioned in the deed must govern the parties and those claiming under them; for in such case there can exist no latent ambiguity, because no extrinsic facts or circumstances exist to create it." The case there referred to is in point to show that the parol evidence of May, which was received in this case to contra-

dict the written description in the deed, ought to have been rejected. In that case the land had been laid out on actual survey by the scrivener who drew the deed; and by mistake in drawing the conveyance, the first course was written *north* 69 deg. west, instead of *south* 69 deg. west, all the other calls in the deed corresponding with an actual location, which could be made by running either way; but one location embracing more land than the other. The parol evidence, however, was not allowed to contradict the deed, so as to include the land surveyed, although the *range line* which terminated the second course according to the deed was not a *range line* which the parties ran to, on the second course in making the survey, and was not the line they intended as the termination of that course, or that which was to direct the course of the next line.

In this case it is not at all improble that Tymason and May both supposed the line running north-westerly from the oak tree and that which ran south-easterly from the south-east corner of No. 59 were one and the same line, and was the boundary referred to in the deeds to Tymason; but when they copied the description from the boundaries in those deeds, neither party supposed the deed to May was to cover any other land than that which had been previously conveyed to Tymason. From the testimony of Dr. Campbell, I infer that he ran out some of the lines of the lot. Indeed I do not see how it was possible for him to have made the map annexed to the deed, without having measured the west line, so as to ascertain the distance between the south-east corner of 59 and the ash tree marked as a corner, and between that tree and the termination of the 30 chains and 50 links described in the deed as the length of that line. The map was made at the time, and the distance between the ash tree and the south-east corner of 59, as marked on that map, corresponded with the distance as it is now found to be on actual survey. Whether he found the ironwood tree and the crooked beach marked 1, 2, or laid them down upon the map at the places where, from the description in Tymason's deeds, he supposed them to have been, is more uncertain. I think he must probably have traced the course by his compass, if not actually

measured across the north end of the lot described in the conveyances, and thereby ascertained that the beach tree which he has marked on the map was about as far from the supposed or actual location of the crooked beach, as it was between the ash tree and the north-west corner. He says he knows the map could not have been made on actual survey; not that he knows he did not survey the lines of the lot. It is evident that all he means to say is, that the courses and distances on the map correspond exactly with the deeds to Tymason, and that it is wholly improbable, if not actually impossible, to run a piece of land of this size twice over, at intervals of some years, and to have the courses agree to a minute and the distances to a single link. From the description in the deed, he says that Tymason's land lay in the form of a parallelogram. It was not necessary, therefore, for him to measure more than two lines, and to set his compass upon and thus obtain the direction of the others, to ascertain whether the quantity of land mentioned in the deed was contained in the lot; and as Tymason supposed he knew about where the line was at the south-east corner, it was only necessary to ascertain the direction of the lines at the south-east corner of No. 59, which was a known boundary, and to run the length of that line, and then measure across the north end and get the direction of the east line. That Dr. Campbell did not begin at the oak tree, or put that upon the map from any thing he knew of it himself, is very certain; for he swears he never was at it until 1829, when it was shown to him by J. Ellison. He must therefore have marked the words *red oak tree* upon the map, from some information obtained from others. It is evident also, from the testimony, that this red oak tree was not marked as the corner of No. 60 at the time that line was run out. Dr. Campbell says it was blazed on two sides, which indicated that it stood in or near some line running through or past it, but not that it was a corner on the Cherry Valley line, which continued further east. The surveyor's marks for a corner at that place, supposing it to be on the line of the Cherry Valley patent, would have been two blazes in the direction of that line, and one on the side next

ALBANY, Dec. 1835.

Tymason v. Bates.

to Livingston's patent; indicating a corner of a lot No. 60 and No. 36, in Livingston's patent, at that point. And the marks of red chalk on four sides, as testified to by one of the witnesses, if it indicated any thing, would designate it as a tree at which two lines crossed each other at right angles. The line running from or by that tree must therefore have been a sable or hunter's line leading to the spring, or some false line run by a surveyor; but it could not have been run as the south line of No. 60, as that line was right farther west, and corresponded with the south line of 59, which must have been run at the same time. Neither could this tree have been blazed in 1794, when Andrus subdivided lot No. 60, as Dr. Campbell counted forty grains in 1829, and it had then been dead some years.

The decision in the case of *Wendell* v. *The People*, 8 *Wendell*, 183, has nothing to do with the questions arising here, except so far as some of the reasoning in the opinion delivered in that court, upon the general principles of the construction to be given to the locative calls in a conveyance, is applicable here. It was there said, that as conveyances were supposed to be made in reference to an actual view of the premises, both course and distance must give way to natural or artificial monuments; but it was not intended to say they must give way to artificial monuments not described in the deed, and which did not ascertain or determine any descriptive call in the conveyance. Much less can such monuments, not referred to by the deed itself, be permitted to control the descriptive calls of the deed, where those descriptive calls are not ambiguous, and correspond with each other in every respect, so far as they can be found.

Here there is no latent ambiguity arising from any fact out of the deed, nor is the deed ambiguous on its face. It begins at the south-east corner of lot No. 60, in the line of Lindsey and Roseboom's tract, both of which correspond with the corner of the lot which Tymason then owned, and with all the other locative calls in the deed. It runs thence north 38 degrees 12 min. east, as the needle pointed when Livingston's patent was divided into lots, 30 chains and 50 links, to a *crooked beach*

*tree marked*, 1, 2. If that monument can be found, it will run to that, whether it be more or less than the distance described; and if it cannot be found, the line will not terminate at the blazed beach tree, but must run on the whole distance described in the deed, or at least to the centre of lot No. 60, which is some distance beyond that tree. It then runs across the lot to No. 59, *to an ironwood sapling and a basswood tree marked* 1, 2; and if they cannot be found, the line must be run across the lot in the direction given in that call of the deed: but not to the ash tree which May says was shown to him, as that stands farther south and is not mentioned in the deed. The next course is in the line of No. 59, to the southeast corner thereof, in the line of Lindsey and Roseboom's tract; and as to the course and place of termination of this last locative call in the deed, there can be no doubt. From thence the deed calls for a course and distance to the place of beginning, exactly corresponding with the true line of the Cherry Valley patent, and necessarily excluding the premises from which Bates was evicted. The plaintiff did not therefore show that there was any latent ambiguity in this case, arising from the locative calls of the deed, when taken in connection with their actual location in reference to the land itself: for they agree in every respect, so far as they have been searched for and can be found. He was nevertheless permitted to create an ambiguity, by parol proof that Tymason did not intend to convey the land actually described in the deed; although the same land had been purchased by him of Jay and others by the same description; and also to show by parol that Tymason intended to convey a lot of land bounded by a line running from the ash tree on the north, and a line running from the oak tree on the south, although neither of those trees or lines are described in the deed, or correspond with any of the locative calls therein. I am satisfied that such a decision cannot be sustained, without virtually repealing the statute of frauds and perjuries, which, for wise purposes, has required that all conveyances of land shall be in writing. And if a conveyance of one piece of land can by

ALBANY, Dec. 1835.

Tymason v. Bates.

parol proof be made to convey another which is not covered by the known boundaries mentioned in the deed itself, that statute is worse than useless.

But it is said that there was no error in this case, as the question of parcel or no parcel is always a matter of fact for the jury; and that the jury have found that the land described in this deed is partly in the Cherry Valley patent. It is in reference to this question that I have refrained from noticing the testimony given on the part of the defendant, after the motion for a nonsuit was denied. At the time the motion for a nonsuit was made and denied, neither Ellison or Ripley had been examined as witnesses; and the whole case therefore depended upon the uncontradicted testimony of Campbell and May. No witness had then testified that he even supposed the line running from the oak tree was the line of the Cherry Valley patent, or that he ever heard it called so; and the true line of that patent was proved to correspond with the defendant's construction of the deed. There was no question of fact, therefore, for the jury to pass upon; and where the facts are ascertained, the question of parcel or no parcel is a pure question of law, which it is the duty of the court to decide; and if the court neglects to decide it correctly, and to nonsuit the plaintiff where the premises in controversy, from the facts proved, are clearly not a parcel of the land described in the deed, it is an error in law, for which the judgment should be reversed. May did not testify that Tymason pointed out the premises south of the true Cherry Valley line, as a part of the premises described in the deed, as that deed had not then been drawn; and if he had pointed out the blazed ash tree as the northwest corner of the lot described in the deed to himself, May would have seen at once that the corner, as described in the deed, was not a blazed ash tree, but an ironwood sapling and a basswood, marked and numbered. There was no question of fact for the jury to pass upon at that time as to what was actually contained in the deed; and as parol proof of what was intended to be contained therein was inadmissible, the nonsuit should have been granted. That exception was therefore

well taken; as was also the exception to the introduction of any testimony by parol, to show what was intended by the parties, when no latent ambiguity existed. Neither do I think the subsequent evidence varied the case, except that it went in some measure to supply Doctor Campbell's want of recollection as to what took place at the time of the survey.

Upon the whole, I am satisfied that this decision cannot be permitted to stand, consistently with the rules of law, and the safety of *bona fide* purchasers of lands, which are not actually covered by any previous conveyance. The judgment complained of should therefore be reversed.

By Senator MAISON. The jury in this case have found the issues between the parties in favor of the plaintiff. They have found specifically that the defendant, at the time of the execution of the deed in the declaration set forth, was not the true and lawful owner of the lands in the deed described and conveyed, nor was he lawfully seized of an indefeasible estate of inheritance in fee simple, nor had he good right or lawful authority to grant and convey the same. And the jury further found, that George Clark and Josiah Stearns, at the time of executing the said deed, had a lawful right and title to a part of the premises conveyed in the deed, which they have recovered of the plaintiff and have ejected and removed him therefrom; and they assessed the damages of the plaintiff, on occasion of the not keeping the covenants in the deed in this particular, to $525. This verdict has been confirmed by the supreme court, and a judgment rendered thereon, which should not be disturbed, unless the exceptions taken at the trial are such as render it the bounden duty of this court to interfere.

The first ground of exception is, that the circuit judge decided that the witness offered by the plaintiff, Calvin May, was a competent witness. He was objected to on the ground that he was a grantor in one of the intermediate conveyances from Tymason to Bates, which conveyance contained covenants similar to those contained in the deed of Tymason to May. May's grantee and the grantees after him to the plaintiff, with the plaintiff, joined in executing a release to May, of

all claim of damages they or either of them might or could have against him, under the covenants contained in his deed. The circuit judge properly decided, that this release restored the competency of May as a witness, and in this he is fully supported by authority. 3 *Starkie's Ev.* 1728, 1729. *Jacobson* v. *Frost,* 6 *Johns. R.* 135.

Exception was also taken at the trial to the decision of the circuit judge, that it was competent to the plaintiff to show that the defendant, while he was negotiating with him for the purchase of the farm in question, pointed out to him the oak tree marked on diagram W. as the south-east corner of the lot, and the other boundaries as laid down in that diagram as the true boundaries of the farm he then owned, and was about to convey. To arrive at a just conclusion as to the propriety of this decision, it is necessary to look at the boundaries in the deed, and see if, from the deed, it is possible to locate this farm without the aid of extrinsic evidence. The most difficult point of inquiry is, to ascertain the place of beginning. If the deed does not settle this point most clearly and definitely, then as a matter of necessary consequence, recourse must be had to oral testimony to establish it. The place of beginning is the south-east corner of lot No. 60, in the line of Lindsey & Roseboom's tract; the plaintiff alleges that corner to be at an oak stump, as marked on diagram W.; the defendant contends it is five chains ninety links north of this oak stump. The parties disagree as to which of the lines running west from the proposed points of beginning is the true north line of the Cherry Valley patent, and the matter in controversy lies between these two lines. Is it possible, from the reading of the deed, to know which is the true corner? There is nothing in the description which would enable a surveyor to locate it, and it is impossible in the nature of things for any court to ascertain and adjudge which is the true corner and line, without the aid of oral testimony. Hence *Starkie,* in the 3d volume of his treatise on Evidence, p. 1021, says it is always necessarily a matter of extrinsic evidence to apply the terms of an instrument to a particular subject matter, the existence of which is also matter of proof. A difficulty in this case occurs, where, although

the terms of an instrument are sufficiently definite and distinct, the objects to which it is to be applied are not equally so; and where it is doubtful whether the description applies at all to the particular object pointed out by the evidence, or whether it be not equally applicable to several distinct objects; and Ashhurst, justice, in the case of *Freeland* v. *Burt*, 1 *T. R.* 701, expressly decided, that the construction of all deeds must be made with reference to their subject matter. Thus in that case there was a demise of certain premises in Westminster, late in the occupation of A., particularly describing them, part of which was a yard; underneath the yard was a cellar, which the lessee claimed as within the terms of his lease, upon the ground that he was entitled to all above and below the lands demised; and it was held that the lessor was not estopped by his deed from going into evidence to show that the cellar was not intended to be demised.

So in the famous case of *Barclay* v. *Howell*, 6 *Peters*, 498, one Woods, a surveyor, was authorized to lay out the town of Pittsburgh, afterwards incorporated as a city, and did accordingly lay out the same and made a map thereof. An action of ejectment was brought by the plaintiff, to recover a lot of land in the city of Pittsburgh, lying between Water street and the Monongahela river. It did not appear, from the plan of the town, that any artificial boundary, as the southern limits of Water street, was laid down; nor was there any indication given in the plot, that Water street did not extend to the river, as it appears to do from the face of the plot. Parol evidence was permitted to show where the place of beginning in fact was, from what Wood the surveyor said, at the time of the survey. A witness, Ewalt, stated that the survey was about to be commenced at a point which would have required him to remove his house, and that at his instance the place of beginning was changed, and both Ewalt and Finley stated that Wood said that this street, to low water mark, should be for the use of the citizens and the public forever, who might use the same as landings, build walls, make wharves and plant trees at their pleasure. The court say, page 504, "the declarations referred to were a part of the *res gesta*—they were explanatory of the act then being done, and they do not, as was

ALBANY, Dec. 1835. Tymason v. Bates.

contended, contradict the return, but tend to explain and confirm it. The southern limit of Water street was a point of inquiry before the jury. It was a question of boundary, and governed by the same rules of evidence which are of daily application in such a case. In this view, were not the declarations of the persons who fixed the boundary legal evidence? Not declarations casually made at a different time from that at which the survey was executed, but at the very time the act was done. The proof of such declarations should have been admitted by the circuit court under the circumstances; they formed a part of the transaction." At pages 509 and 510, the court further remark, "The right of the court to determine the legal effect of written instruments cannot be controverted, but the question of boundary is always a matter of fact for the determination of the jury. If the court, in a question of boundary, may fix the limits of the grant, and then say what the legal effect of it shall be, there is nothing left for the action of the jury." The judgment of the circuit court, for this as well as other grounds, was reversed.

In the case of *Howard* v. *Cromwell*, 1 *Harr. & Johns.* 118, it was well remarked by the court, that the jury are to determine the true location of lands in controversy from the evidence adduced to them; and the courts have gone so far as to admit in evidence the declarations of a former holder of the adjoining lands, as to the bounds of the lands in dispute. *Hale* v. *Gittings*, 2 *Harr. & Johns.* 121. *Bridgman* v. *Jennings*, *id.* 734. *Davies* v. *Pierce*, 2 *T. R.* 53. And it has become the settled law to admit in evidence the declarations of a person claiming land, or through whom land is claimed, against his interest, upon the same principle as admissions and confessions in other cases. *Jackson* v. *Vredenburgh*, 1 *Johns. R.* 159. *Waring* v. *Warren*, *id.* 340. *Freeborn* v. *Bard*, 4 *id.* 230. *Jackson* v. *Sherman*, 6 *id.* 19. *Jackson* v. *M'Donald*, 10 *id.* 377. *Bartlett* v. *Delprat*, 4 *Mass. R.* 702. And in the late case of *Jackson* v. *Wendell*, 5 *Wendell*, 142, parol evidence was received without objection, for the purpose of ascertaining the place of beginning of the land then in controversy. See also *Dogan* v. *Seekright*, 4 *Hen. & Munf.* 125. The rule is too well settled now to be questioned. It appears

to me most evident, as well from the reason and nature of the thing as from authority, that the judge correctly admitted in evidence the declarations of Tymason, the grantor in the deed and the party defendant here, as to the place of beginning and the boundaries of the lot, he was then about selling to May.

A number of cases have been cited to show that no parol evidence is admissible to alter, contradict or vary the plain and obvious intent of the party, as expressed in a deed or will. The rules settled by those cases are unquestioned and unquestionable, but their non-applicability to the facts in this case is most apparent. The admission of parol evidence in the case at bar is not to alter, but to fix; not to contradict, but to confirm; not to vary, but to establish the intent of the party, as expressed in the deed, to the certain and precise object of negotiation and sale between them—an adaptation of the boundaries in the deed to the place of beginning, and the lines of the farm which the grantor pointed out, and traced with the party, and signified to him as the precise land sold: using the words in the deed, as fully descriptive of the premises thus pointed out. It was this consideration which influenced the court in the case of *Ellice* v. *Britton*, 4 *Wend.* 507, to hold, where premises had been demised by a lease by distances from a given corner, and were bounded on one side by a lot described as of a particular number, and a diagram of the demised premises described an obtuse angle, leaving a gore between the angle and the lot specified as a boundary, that *parol* evidence was admissible to shew the *intent* of the parties, to cover as well the gore as the premises included within the distances. So in the case at bar, it was necessary to admit parol evidence, for the purpose of showing what location was intended by the parties, by the language by them for that purpose used in the deed. There is therefore no ground for this exception.

The next exception is, that the circuit judge refused to grant a nonsuit upon the defendant's application, after the plaintiff had rested his cause; this is, in effect, a renewal in another form of the exception just considered, and in my mind at least satisfactorily disposed of. If the judge was right, as I think he was, in admitting parol evidence for the purposes

just mentioned, there can be no pretence for a motion for a nonsuit; nor was there indeed any necessity for the defendant to make that motion, for if his other exception was well taken, then it is to him a matter of no consequence how far the cause shall thereafter proceed. But if the defendant, in making his motion, intended to concede, as I am bound to suppose he does, that all the testimony then before the court was legally admitted, and that all the facts proved were insufficient to enable the plaintiff to sustain his action, then it is clear that the motion ought not to be sustained; for the plaintiff had made out his case fully, and was entitled to a verdict, and had a right to insist that his case should go to the jury—a right which the judge had no power to control, or take away from him. I do not intend here to move the question, whether the judge has a rightful power to order a nonsuit in any case, which the supreme court of the United States has thrice decided he has not, upon the ground that the plaintiff has a right to have his cause passed upon by a jury; and that he cannot be nonsuited without his consent, in any case. *Doe* v. *Grimes*, 1 *Peters' U. S. Rep.* 471. *De Wolf* v. *Rabaud*, *id.* 496. *Crane* v. *Astor*, 6 *Peters' U. S. R.* 601. But I do mean to deny that the judge's refusal to grant a nonsuit is a ground for exception to be brought up by bill. If the judge improperly refuse to grant a nonsuit, and if the defendant conceive there is no fact to be found by the jury, his proper course is to demur to the evidence, in which he admits the facts, and thus reserves to the judges, to whom it properly appertains, the pronunciation of the law upon the facts thus admitted; his rights are consequently in no measure or degree affected by the refusal to nonsuit, as he has a perfect remedy in the way suggested.

The last exception taken is to the charge of the judge to the jury. In the charge the judge repeats the decisions he had made in the progress of the cause, to which the exceptions had been taken, as has been noticed; but there are two points in that charge not included in the exceptions noticed, which it is proper to dispose of. The first is, that when a line is referred to by way of description in a deed, the existing ground line, known and undisputed, should prevail over an

ideal line, existing only in contemplation of law at the time of the grant; though in fact the ideal line was the true one. And secondly, that all the evidence was before them, and ought to be weighed and compared; that if, from the whole testimony, they believed that at the time of the execution of the deed from Tymason to May, Tymason had located subdivision No. 1 up to the dotted line, and actually possessed to that line; that he pointed out to the purchaser the dotted line as the line to which he meant to convey, and that both parties then believed that to be the north line of the Cherry Valley patent, they ought to find their verdict for the plaintiff, otherwise, for the defendant. 1. The line claimed by the plaintiff below, as the true line, the dotted line on the diagram W. was a well known ground line; an undisturbed possession of the land in controversy has been held up to the dotted line for upwards of 15 years; the occupier of the adjoining lot had always recognized this line as the true south line of lot No. 60, and no witness could be found who knew the possession to have been otherwise than to the dotted line, as pointed out by Tymason at the time of his grant to May; or that the dotted line was ever known, considered, or even suspected not to be the true north line of the Cherry Valley patent, until the suit of *Clark and Stearns* against the plaintiff in 1829. The determination of that suit fixed the true north line of the Cherry Valley patent to be a line running parallel to the dotted line, and 5 chains and 90 links north of it; the dotted line, up to the time mentioned, was not only known and recognized as the true line, by the possession being held to it, but it was so known because it was a marked line—a well known ground line. The oak stump at the east end of the dotted line has been known for many years, and recognized as being a corner monument; it was marked on four sides; it was examined a short time before the trial, and though considerably decayed, the grains on the marks counted 40 years. A part of the line was in fence, and marked trees were found along the line, some of them of 50 years standing; but on the line 5 chains 90 links north of this, which is now claimed by the defendant as the true

ALBANY, Dec. 1835.

Tymason v. Bates.

line, there are no marked trees, except for a short distance west of the creek; neither are there, nor had there been, any fences on this line, nor any tree or stump for a corner, and the clearing was at and near and along the dotted line (some three or four acres) made more than 30 years ago, principally, if not wholly, south of the red line. It is not a matter of doubt but that this dotted line was the well known ground line and northern boundary of the Cherry Valley patent.

It has been solemnly adjudged that a marked line shall prevail over one that is not marked. *Dogan* v. *Seekwright*, 4 *Hen. & Mun.* 125. And where a place of beginning is well known and established, it must control all the courses and distances; and by way of showing how rigid and uncompromising this rule is, I refer to the case of *Wendell* v. *The People*, 5 *Wendell*, 146, 7, in the supreme court, and which was afterwards affirmed in this court. 8 *Wendell*, 190. It was there held, that when there is a known and well ascertained place of beginning, it must govern the location of the grant or patent. It is immaterial, the court say, how many natural monuments there may be in the courses given—the place of beginning is a controlling point; and if rendered certain, no matter in what manner, it cannot be abandoned, and another position assumed as the starting point. A natural, permanent, or well known monument, as a river, *clearing*, a *marked tree*, or any other well ascertained object, will control courses and distances, and quantity, where they come in conflict. Where the place of beginning can be ascertained, and the two first courses can be run according to the description, it is no reason for deranging the whole patent, that in one or more of the subsequent lines the courses and distances cannot be made to conform to the given monument; you must run according to the courses and distances as far as you can, and the courses and distances which are affected by the permanent object must yield to them. In that case the quantity of acres in the tract fell short one half—the third line was too short by nearly one half—the fourth line crosses the first line above the place of beginning, and the south line was lost. See also, *Doe* v. *Thompson*, 5 *Cowen*, 371; *Jackson* v. *Wilkin-*

*son*, 17 *Johns. R.* 156 ; *Ellice* v. *Britton*, 4 *Wendell*, 507 ; *Barclay* v. *Howell*, 6 *Peters' U. S. R.* 498. Now, in application of the principles of that decision to this case, all the lines of this lot are perfectly preserved ; and the party has the precise quantity of acres specified in the deed. The circuit judge was, therefore, well warranted in charging the jury, that the existing ground line, known and undisputed, should prevail over an ideal line.

2. The last branch of the judge's charge appears to me to be the only charge he should and ought to have given. In addition to the facts already alluded to, as authoritative of the course pursued by the circuit judge, there are other considerations in this case to which it may be well to refer. Immediately after Tymason had pointed out to May the courses and lines of this lot, the conveyance was executed not only, but May went into immediate possession of the land thus designated and conveyed ; and it has been adjudged that possession taken at the time is to be considered as a practical location by the mutual consent of the parties. *Jackson* v. *Gardner*. 8 *Johns. R.* 317. All grants are, in legal acceptation, supposed to be made with reference to an actual view of the premises by the parties thereto. *Wendell* v. *The People*, 8 *Wendell*, 190. In the case at bar there is no necessity for any legal supposition ; it is most fully proved that the grant was in fact made upon an actual view of the premises, when the corners and courses were specially particularized and traced. All this was matter properly given in evidence before the jury ; they were necessarily obliged to relate back to the period of this purchase, and ascertain from the lights then existing, which place of beginning was understood and intended by the parties as the true one. It is not without judicial sanction that the jury were permitted to look into the state of facts actually existing at the time of the conveyance, the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted, at the time of making the grant, for the purpose of ascertaining what their intent was. *Whallen* v. *Kauffman*, 19 *Johns. R.* 100, 104. Now, in connection with all these considerations, the sound

ALBANY,
Dec. 1835.

Tymason
v.
Bates.

common sense of the case sanctions the course pursued at the trial, and approbates the wisdom of the law which approves that course. The object of purchase was the southerly moiety or half part of lot No. 60. This lot is in form nearly a parallelogram; the north and south lines are precisely of equal length, the east line a little shorter than the west. Lot No. 2, the northerly half of lot 60, has been occupied and possessed, and was so, at the time of May's purchase, down to the line, which has for its eastern termination a blazed beach tree, and its western a blazed ash tree, running nearly at right angles to the eastern line; the east part of this line and nearly one third of its distance was in fence, and on the residue of the line was traced marked trees; that also was a known and reputed ground line. The eastern line of this lot measures 29 chains 77 links; the residue of this eastern line of lot 60, to the point contended for by the defendant as the southeast corner thereof, measures only 24 chains and 7 links; but if continued to the oak stump contended for by the plaintiff as the true corner, it measures 29 chains 97 links. Again; the defendant insists that the blazed beech tree on the eastern line is short of the northern termination of the east line of lot No. 1, by 6 chains and 30 links. The surveyor run the line 6 chains 30 links north of the blazed beach tree, and he there found no tree or stump, and there is no evidence that at the northern termination of the west line, as contended for by the defendant, there is any iron-wood sapling, or a bass-wood tree marked. It is now too late for Tymason to set up any new location, the necessary consequence of which is, in order to give the plaintiff his quantity of land, to invade the possession of the owner of lot No. 2; which cannot be done. So that in every view in which this case can be presented, we are led to the necessary conclusion that the charge of the judge to the jury is free from all just or legal exception.

It is not necessary to pursue the examination with a view of ascertaining whether the verdict was against the weight of evidence. The counsel, in the course of their argument, have addressed the court at though we were to act

in the double capacity of jurors and judges. Against such a course of proceeding I must enter a protest. The functions of the court extend only to the declaration of the law, arising on the facts found by the jury, or conceded by the parties, and we are bound to consider the facts as truly found by the verdict. If that verdict be against evidence, the error cannot be corrected on a bill of exceptions; the remedy is by motion for a new trial. The rule has been deliberately settled, it is just in its operation, convenient in practice, and should be rigidly adhered to. *Whiteside* v. *Jackson*, 1 *Wendell*, 418.

The counsel for the defendant has contended that the only proper remedy for the plaintiff is by an action of deceit against the defendant, for professing to own and to sell land which was not his. There is no pretence or ground for such an action. It is abundantly established that the defendant honestly supposed he owned the land he sold; and an action of deceit cannot be supported, unless upon proof that the defendant knew at the time that he did not own the premises which he pointed out. The defendant is not obnoxious to any imputation of fraud or deceit; he verily believed, as did all the neighborhood, the lands to the limits he pointed out to be his; and he actually sold the land thus pointed out to May; and May purchased and paid for the land thus specifically shown to him; and which both grantor and grantee believed, as was their intention, that the land thus pointed out was conveyed by the descriptions thereof given in the deed. The plaintiff has been evicted from a part of the land thus sold, by reason of a title paramount to that which Tymason had; and there is not, and there cannot be any reason in law or equity, in honor or honesty, why Tymason should not refund the money in this form of action, which he has received for the sale of land which did not in fact belong to him; but which, in his deed, he intended to and did covenant was his. I am bound to give this construction, under the circumstances of this case, to the covenants in this deed, as it is according to the manifest spirit and unquestioned intent of the party. *Quackenboss* v. *Lansing*, 6 *Johns. R.* 49. *Worthington* v. *Hylyer*, 4 *Mass. R.* 205.

ALBANY, Dec. 1835.

Tymason v. Bates.

I am therefore for affirming the judgment of the supreme court.

By Senator TRACY. In any view that I can take of this case, the material question it presents is, can parol proof be admitted to vary the legal operation of a deed, by showing an intention of the parties different from that which the deed expresses? The supreme court has treated the question as one merely of the location of boundaries, and hence, I apprehend, has arisen the error in the judgment we are called on to review.

If the deed from Tymason to May had described the premises conveyed, only as the farm on which he lived, or had commenced the boundary at the south east corner of the premises conveyed, it is plain that extrinsic evidence would be proper and necessary to apply the terms of the deed to the particular subject intended to be conveyed. So also had there been a reference in the deed for a boundary, to an object which was expressed in terms sufficiently definite and distinct, but which object was uncertain, either as to its existence or its identity, extrinsic proof must of course be resorted to, to ascertain and establish that to which the terms of the deed refer. But in doing this you are seeking only to give force and effect to the terms used, and not to impair or change them. In this case there is no uncertainty as to the existence or identity of the object which the terms of the deed designate, for the plaintiff has laid the foundation of his action in its existence and identity; but he complains that the object designated proves to be different from what the parties supposed it to be when they rereferred to it in the deed.

The deed describes the boundaries of the premises conveyed as beginning at the south-east corner of lot number sixty, *in the line of Lindsey and Roseboom's tract.* The existence and location of this line is not, in this case, the subject of dispute; but the question proposed to be involved is, whether the parties to the deed meant to refer to what is proved to be the true line, or to another line, which they supposed to be the real line of Lindsey and Roseboom's tract, but which in fact was not. Now I

take the principle to be, that what the parties intend must be ascertained by what is expressed in the deed, and cannot be brought into doubt by proof *dehors* the deed. If, however, their intention is not expressed in the deed, extrinsic evidence must be resorted to, to supply that which the instrument does not supply. Here there is no ambiguity in the expression used, nor any thing in the deed to show that the parties did not mean exactly what they say. I am not satisfied that in giving the point of beginning its true location on the actual line of Lindsey and Roseboom's tract, there is any incongruity with it in the subsequent courses and distances; but if it were so, it would not produce a legal ambiguity as to the place of beginning; for the rule in this respect was correctly stated by Mr. Justice Sutherland, when this case was first before the supreme court, that if the place of beginning is certain, or can be clearly ascertained by proof, the location must be made, commencing at that point, although, in consequence thereof, the location could not be made to correspond with all the subsequent courses and distances. It is a necessary consequence of this rule, that the impracticability of establishing the subsequent courses and distances according to the description of them given in the deed, would not produce an ambiguity as to the point of beginning, if it were otherwise sufficiently definite and distinct. Here the line referred to, being the north line of what commonly is called the Cherry Valley patent, had a certain existence, independent of the acts or understanding of the parties to this deed. Its existence or location was not merely conventional between them. I mean by this, it was not in their power to create it, vary it, or abolish it, any more than they could a township, county, or state line. They might mutually misapprehend where it was, as parties often misapprehend where natural or artificial monuments are, by supposing them to be nearer to or further from each other than they afterwards prove to be; but it seems to me that a mistake in one case must be subject to exactly the same construction as in the other. It must be presumed that the parties mean, at all hazards, the boundaries which they give, and even if the result be different from what one or both

ALBANY, Dec. 1835.

Tymason v. Bates.

parties probably anticipated, it is inferred that each agreed to take his chance of it. In this case, if the line of the Cherry Valley patent had been as far south as it proved to be north of what it is said the parties at the time of the conveyance supposed it to be, there can be no doubt that the grantee would have held to the line, and that the grantor would not have been suffered to show, by parol, that he did not intend to convey as much land as he did convey. If this be true, as to the grantor, it is difficult to see why the grantee is not equally concluded by the terms of the deed.

The supreme court assume that if the patentees had given this deed, and fixed the south-east corner by an actual location, they would not have been allowed, by resorting to the residue of the description, to show that there was a mistake in fixing the corner, and that it was not where they intended it should be. This is very true, but it proves nothing in this case, unless it be that parties shall not be permitted to prove that their intention was different from what they express in the deed. What, perhaps, the supreme court meant by the remark is, that if the location of the original north line of the Cherry Valley patent was in question, proof how and where it was located by the parties having the power to establish it would control an inaccurate or defective description of its location. This would bring it within the principle laid down in *Dogan* v. *Seekright*, 4 *Hen. & Mun.* 131, that if parties to an instrument have the power of establishing the line referred to, then proof of the line actually established will be evidence of the line intended in the instrument. This is also the principle of the decision in *Barclay* v. *Howell*, 6 *Peters' R.* 498, where it was a question of what was dedicated to public uses by the owner of a tract in the original survey and plan. But the present case is widely distinguishable from these, by the fact that the line referred to was distinct and independent of any act of the parties to the deed, as much so as though it had been a mountain or a river. It is also very distinguishable from the uumerous cases cited on the argument, where there were uncertain or contradictory description; all which cases come within the principle of the rule in *Worthington* v. *Tyler*, 4 *Mass. R.* 196; reiterated in *Jackson* v. *Clark*, 7 *Johns. R.* 223;

and again, in *Jackson* v. *Loomis*, 18 *id.* 84, that if there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant, but may be rejected as surplusage. The governing consideration, in all cases upon the construction of deeds is, say the court, in the last case to give effect to the intention of parties, *if the words they employ* will admit of it. The cases, 1 *T. R.* 701, 1 *Maule & Selw.* 299, 1 *Barn. & Ald.* 247, are cases of ambiguous or duplicate description, where parol proof was necessary to point an instrument to its object, and are within the same rule given in *Whallen* v. *Kauffman*, 19 *Johns. R.* 100, that if the words are susceptible of different constructions, consideration may be given to the circumstances attending the transaction, the particular situation of the parties, and the state of the thing granted at the time of making the grant, for the purpose of ascertaining the probable intent. But this is the extent to which courts have gone, or can go, without trenching on the great principle briefly expressed by Lord Eldon, in *Tilden* v. *Studley*, *Finch's R.* 90, that the intent of the parties can only be collected from the instrument itself, and not from any thing *dehors;* and so rigidly has this principle been adhered to in some cases, that we find the court deciding, 11 *East*, 312, that if a word of description is used in a deed to which the law affixes a certain sense, evidence shall not be admitted to show that by the custom of the country the word bears a sense different from its ordinary acceptation, unless the deed expressly refer to such peculiar or customary meaning. But here it is not necessary to apply the rule so rigorously, to exclude the parol proof offered: for the most that is pretended is, that there was a general misapprehension, in which the parties participated, as to where the north line of the Cherry Valley patent run; but this misapprehension, if proved, did not prove and could not prove that the parties did not intend to bound by it, wherever it might run; and the proof offered was not merely to show this misapprehension, for that of itself would avail nothing, but to prove that when the parties said in the deed that the south-east corner of

ALBANY, Dec. 1835.

Tymason v. Bates.

the premises conveyed should be in the line of Lindsey and Roseboom's tract, they did not mean it should be there, but somewhere else.

It is in vain to say that "what appeared to be facts to both parties at the time the contract was made must, with a view of ascertaining the intent of the parties, be considered as facts, whether in reality they existed or not." This is merely changing the words of the proposition, without changing its substance; for the question recurs, is parol evidence admissible to show that the facts did appear differently at the time of the contract from what the parties have represented in the contract that they did appear? Although all deeds should be construed according to the intent of the parties, yet such intent must be collected from the deed alone, for the law deems that parties intend, what the words of their deed legally import. How, in this case, is it to be ascertained where the south-east corner of the premises conveyed appeared to the parties to be at the time of making their contract? Certainly only by referring to the contract itself, where it is found appearing to them to be in the line of Lindsey and Roseboom's tract. And how is it proposed to show that this is not where it appeared to them to be? only by parol proof, which shall contradict the fact they have asserted in their deed. I repeat, therefore, that turn this case whichever way it may be, and it cannot be more ingeniously contorted than it was on the argument, still it comes back to the proposition of contradicting by parol proof the intent of parties as expressed on the face of their contract.

This proposition in the abstract it cannot be necessary to discuss; for if there is any rule of evidence more important than any other, it is that which forbids parol proof to vary or contradict written contracts. "It would be inconvenient," says Lord Coke, "that matters in writing, made by advice and on consideration, and which finally import the certain truth of the agreement of the parties, should be controlled by an averment of the parties to be proved by the uncertain testimony of slippery memory; and it would be dangerous to purchasers, and all others, in such cases, if such nude averments

against matter in writing should be admitted." I will only add, that the present case affords a most striking illustration of the truth and wisdom of this remark, and of the dangers of departing from a salutary and important rule. Here resort has been had to the "slippery memory" of the grantee of a deed, made more than twenty years ago, to prove that the deed did not "import the certain truth of the agreement of the parties;" and on this proof a verdict has been obtained, which it is impossible for any one looking over the whole case to be satisfied was given, according to the weight of evidence that was admitted. I allude to this latter circumstance not as one to affect the judgment which this court should give, but only as exemplifying the great hazard of attempting to reach justice by any other path than the law points out. I shall vote for reversing the judgment of the supreme court.

<div style="text-align: right">
ALBANY,
Dec. 1835.

Tymason
v.
Bates.
</div>

On the question being put, *Shall this judgment be reversed?* the members of the court voted as follows :

*In the affirmative*—The CHANCELLOR, and *Senators* BISHOP, CROPSEY, EDMONDS, EDWARDS, FOX, GANSEVOORT, HALSEY, LACY, LAWYER, LOOMIS, MAC DONALD, M'DOWELL, TRACY, VAN SCHAICK—15.

*In the negative*—*Senators* ARMSTRONG, DOWNING, MACK, MAISON, WILLES, YOUNG—6.

Whereupon the judgment of the supreme court was RE-VERSED.