JACKSON, ex dem. The People of the state of New-York, *vs.*
L. WENDELL.

A known and well ascertained *place of beginning* governs in the location of a
grant or patent; and particularly so where the fixed and *permanent boun-
dary,* which it was contended should control, is not given or recognized by
the grant itself, but is incidentally mentioned in another grant subsequent-
ly made, though in that it is described as a *corner* of the tract first granted.

*It seems,* however, that if there were natural monuments in the grant itself,
the *place of beginning* is a controlling point ; and if rendered certain, no
matter in what manner, it cannot be abandoned and another position as-
sumed as the starting point.

Where a witness speaks of a survey of lands, and states that one tract bounds
upon another, not leaving any lands between them, but at the same time
says that he does not know where the surveyor commenced in making his
survey, and does not pretend that he is acquainted with the lines of such
survey, or ever traced them, it will be intended that he meant to be un-
derstood as expressing merely a general and vague belief or impression,
without any accurate knowledge upon the subject.

THIS was an action of *ejectment,* tried before the Hon.
ESEK COWEN, one of the circuit judges.

The defendant was in possession of about twenty-one
acres of land, part of a lot designated as *lot F. 6,* which it
was alleged *had never been granted* by the state to any per-
son whatever. To shew that it had been granted, and that
the title of the state was divested, the defendant produced
*letters patent* of two tracts of land ; the first of a tract called
Road Patent No. 2, granted to John Thurman, bearing date
the 8th May, 1795, in which the premises granted were de-
scribed as beginning at the *eastermost corner of township No.*
24 of Totten and Crossfield's purchase, and running thence
along the same north 31 degrees and 15 minutes west 330
chains ; thence north 40 degrees east 105 chains and 50
links ; thence south 50 degrees east 153 chains to *Scaroon
Lake,* then *across the same* south 6 degrees and 45 minutes
east 240 chains; thence south 58 degrees and 45 minutes
west 50 chains to the place of beginning, containing 3500
acres : and the second of a tract called the *Hoffman town-
ship,* granted on the 15th May, 1795, described as beginning
at a large clump of rocks on the west bank of the *Scaroon*

*Lake, at the northeast corner of a tract of* 3500 *acres of land granted to John Thurman,* running thence north 50 degees west 153 chains; thence south 40 degrees west 105 chains 50 links to the northeast bounds of township No. 24 in Totten and Crossfield's purchase, &c. The defendant proved, by a witness of the name of Charles Leggett, that about 30 years before the trial, a surveyor of the name of *Moxom* surveyed *Road Patent No.* 2, and according to his survey *lot F.* 6 was included within the bounds of that patent, and there was no gore left between that tract and the Hoffman township; he did not know where Moxom commenced his survey. This witness further testified, that *according to a survey* of Road Patent No. 2, made by George Webster in 1808, (by the direction of the surveyor general,) the *northeast corner* of that tract is 200 rods westerly of the clump of rocks which he supposed to be the commencement of the Hoffman township; the quantity of acres in the tract falls short nearly one half of that mentioned in the grant; the third line is too short by nearly one half; the fourth line crosses the first line above the place of beginning; and the south line is lost: and according to Webster's survey, *lot F.* 6 is not included in the Road Patent. On his cross-examination, he stated that he himself is a surveyor and *knows the southeast corner* of township No. 24 in Totten and Crossfield's purchase. It is designated, as he testified, as a stake and stones, and is in a large swamp, running from that corner 330 chains, according to the course given in Road Patent No. 2, *lot F.* 6 is not reached nor included in the patent. Daniel Leggett, a witness for the plaintiff, testified that he also is a surveyor, and *knows* the southeast corner of No. 24 in Totten and Crossfield's purchase. It is in a swamp or marshy land. A few years ago he ran the first and second lines of Road Patent No. 2; he traced the east line of township No. 24, 330 chains, and did not reach *lot F.* 6, and testified that the line as run by Webster was correct, making allowances for the inequalities of the ground; he fell short of Webster's corner about 7 chains; he also found Webster's second line correct. Another witness testified that many years ago *Road Patent No.* 2, was supposed to join the

Hoffman township. According to the location of Road Patent No. 2, contended for by the defendant, the southwest corner of that patent would be nearly a mile north of the easternmost corner of township No. 24 of Totten and Crossfield's purchase, given as the place of beginning of the tract. A verdict was taken for the plaintiff, subject to the opinion of this court.

*Greene C. Bronson,* (attorney general,) for the plaintiff. Unless a grant covering the premises in question has been shewn, the verdict must stand. The defendant produced two grants, one called *Road Patent No. 2,* the other the Hoffman township. There can be no pretence that the premises are included in the latter grant; nor are they included in the former. The *place of beginning* of Road Patent No. 2, though designated only as a stake and stones, was proved to be well known, and must govern in the location of the premises granted. 17 *Johns. R.* 146. In the two first courses there is nothing specified by which it could be controlled. The distance in the third course is controlled by the natural boundary of the lake, but there is no necessity of resorting to this boundary to fix the location of the premises granted, the place of beginning being definite and certain. The fact that the tract does not contain the quantity of acres specified in the grant can have no influence in the decision of the question in this case. 1 *Cowen,* 616. 5 *id.* 346, 373. 7 *id.* 723.

*D. Russell,* for defendant, insisted that as the *northeast corner* of the Road patent tract was a fixed, permanent and notorious natural boundary, it should control in the location of the premises granted, in preference to the place of beginning, which is described as a stake and stones, than which nothing can be more uncertain; that in addition to the greater certainty thus attained as to the premises intended to be granted, the whole quantity of land mentioned in the grant would pass, whereas according to the principle contended for on the other side, nearly one half of it is lost, the lines of the tract are shortened, and one whole course is rejected. That the intent of the land-office as to the premises meant to be granted in Road Patent No. 2, is manifest by reference to

the grant of the Hoffman township which bears date but a few days posterior to the other grant, and which in its two first courses and distances precisely corresponds with it. That in the location of premises a fixed natural boundary will control courses and distances, and every other description resorted to, he cited 1 *Phil. Ev.* 21; 9 *Cowen*, 86.

*By the Court*, SUTHERLAND, J.  The question in this case is as to the true location of Road Patent No. 2, in the county of Warren, granted to John Thurman on the 8th day of May, 1795.  If the premises in question are not covered by that patent, the plaintiffs must have judgment, as there is no evidence in the case that they belong to, or are embraced in any other.  If the lot in question is in this patent to Thurman, it is embraced in the angle made by the two first courses specified in the grant, according to the testimony of all the witnesses, starting from what they understand to be the easternmost corner of township No. 24, in Totten and Crossfield's purchase, and running along the east line of that township the course and distance prescribed in the patent to Thurman, the premises in question will not be reached.  The second course may also be run the prescribed distance without touching these premises or interfering with any other grant. The first difficulty in the location occurs in the third course. That line is described as running 153 chains *to Scaroon lake;* but according to Webster's survey, the lake is reached in about half the distance, and being a fixed and permanent object, must control the distance.  The fourth course may be run, but it closes the patent, terminating at the place of beginning; and the south line of the patent being 50 chains, is lost.  According to this survey, the patent falls short nearly one half.  To avoid this result the defendant contends, that instead of commencing at the southwest corner of the patent, the true place of beginning is the northeast corner, which he identifies as being a *clump of rocks on the west bank of the Scaroon lake*, by the introduction of a patent for the Hoffman township, granted seven days after the patent to Thurman, which describes the Hoffman township as beginning at a large clump of rocks and at the northeast corner of a tract of 3500

acres granted to John Thurman. According to Webster's survey, the northeast corner of the patent is 200 rods *westerly* of the clump of rocks. Taking the clump of rocks as the place of beginning, a location of Thurman's patent may undoubtedly be made, which will embrace the premises in question. But the objections to it appear to me insuperable. It was assumed by the counsel for the defendant, that the place of beginning mentioned in Thurman's patent was uncertain; and upon that assumption he contended that it must yield to the fixed and natural monument by which the northeast corner was designated. There might be force in the argument, if the assumption was well founded. But I understand all the witnesses, who testify upon this subject, to speak of the easternmost corner of township No. 24 of Totten and Crossfield's purchase, which is the place of beginning of this patent, as certain and well known.

The defendant's own witness, *Charles Leggett*, says that he is a surveyor, and knows the southeast corner of township No. 24 in Totten and Crossfield's purchase. *It is designated as a stake and stones; it is in a large swamp;* and to get the east line of this patent you must take an offset, as you cannot run through the swamp. Starting *from that corner*, and running on the east boundary line of township No. 24, 330 chains, and you will not reach lot F. 6, the premises in question. *Daniel Leggett*, also a surveyor, a witness for the plaintiff, says *he knows the southeast corner of township No. 24*, in Totten and Crossfield's purchase. *It is in a swamp or marshy land;* and he corroborates the testimony of the preceding witness as to the manner of running the first course in this patent, and that it will not reach the premises. Both these witnesses speak positively, and without any qualification, as to their knowledge of this corner; they speak of it also as a place well known, and as designated by a stake and stones.

Here is no uncertainty as to the place of beginning. It is just as certain upon this evidence as though it were a natural monument; and where there is a known and well ascertained place of beginning, it must govern in the location of a grant or patent. It is immaterial how many natural

monuments there may be in the courses given, the place of beginning is a controlling point, and if rendered certain no matter in what manner, it cannot be abandoned, and another position assumed as the starting point. *Jackson, ex dem. Craigie*, v. *Wilkinson*, 17 *Johns. R.* 146.

The principle is undoubtedly well settled, that in the location of a grant, that which is most certain and material in the description shall control that which is less so. Thus, a natural, permanent, or well known monument, as a river, a spring, a clearing, a marked tree, or any other well ascertained object, will control courses and distance and quantity, when they come in conflict. 1 *Cowen*, 612. 5 *id.* 346. 7 *id.* 723. 6 *Wheaton*, 582. 7 *id.* 10. But where, as in this case, the place of beginning can be ascertained, and the two first courses can be run according to the description, it is no reason for deranging the whole patent, that in one or more of the subsequent lines the courses and distances cannot be made to conform to the given monument. You must run according to the courses and distances as far as you can, and the courses and distances which are affected by the permanent object must yield to them.

It is to be remarked, however, that the monument which the defendant contends is to control the location of this patent, is not given or recognized by the *patent* itself. It is the place at which the Hoffman township begins, and is incidentally mentioned in that grant as the northeast corner of Thurman's patent. A case may be presented, in which this recognition would bind the state; but it can have no effect upon this cause, unless it will authorise an abandonment of the well known place of beginning given in the patent itself, and the two courses which alone affect the lot in question; and in the location and running of which, according to the terms of the patent, no difficulty exists. I know no legal principle upon which this can be done.

*Moxom's survey* is not proved so as to entitle it to any weight. Leggett, the witness who speaks of it, does not pretend that he is acquainted with the lines, or ever traced them; and he states in express terms, that he does not know where Moxom began. Ignorant of his place of be-

ginning, and of his courses and distances, when he says, that by his survey, there was no gore between Road Patent No. 2 and Hoffman's township, he must intend to be understood as expressing merely a general and vague belief or impression, without any accurate knowledge upon the subject. A survey cannot be proved in this manner.

It it is conceded, also, that according to the location for which the defendant contends, assuming the clump of rocks as the place of beginning, the west line of the patent, instead of running down to the southeast corner of township No. 24 of Totton and Crossfield's purchase, will terminate nearly a mile north of that point; so that the effect of this location would be to shove the whole patent one mile north of the well known and established place of beginning pointed out by the patent itself. On the whole case, therefore, the plaintiff is entitled to judgment according to the verdict.