## BATES *vs.* TYMASON.

In an action for breach of a *covenant of seisin,* the plaintiff is entitled to recover if he shows an eviction by due process of law from any portion of the premises embraced within *the courses and distances actually run,* and the *monuments actually established* in a survey made previous to the execution of the deed in reference to the premises conveyed; although the land from which the plaintiff is evicted is not comprised *within the bounds of the tract* of which in the deed it is alleged to be part or parcel.

*Parol evidence* of the *acts* and *declarations* of the covenantor is admissible to show *the courses and distances actually run* and *the monuments actually established* in such previous survey, for the purpose of proving that the land from which the plaintiff is evicted is embraced within the description of the premises as set forth in the deed.

This was an action for *breach of the covenants* of *seisin* and *quiet enjoyment,* contained in a deed executed by the defendant to one Calvin May, of whom the plaintiff is the *assignee,* by sundry mesne conveyances. The action was tried at the *Otsego* circuit in April, 1833, before the Hon. ROBERT MoNELL, one of the circuit judges.

By the deed from Tymason to May, bearing date 30th May, 1812, the grantor, for the consideration of $1500, conveyed certain premises, described as follows: " All that certain piece or parcel of land, situate, lying and being in the town of Cherry Valley, in the county of Otsego and state of New York, known and distinguished as the farm or subdivision No. *one,* of lot No. *Sixty,* in the division of that tract of land which was granted by letters patent unto *Philip Livingston* and others, in the year 1761 ; which said lot No. 60 was subdivided in the year 1794, by John Andrus, surveyor ; and the southerly moiety or half part thereof, distinguished as the subdivision No. *one,* begins *at the southeast corner of the said lot No.* 60, *in the line of Lindsey and Roseboom's tract,* and runs thence, as the needle pointed when the said large tract was divided, north 38 degrees 12 minutes east 30 chains and fifty links, to a crooked beach tree marked 1, 2; thence north 51 degrees 48 minutes west 42 chains, to the bounds of lot No. 59, of the same tract—an iron-wood sapling and a bass-wood tree near it marked 1, 2 ; thence along the bounds of said lot 59 south

38 degrees and 12 minutes west 30 chains and 50 links, to the south-east corner of said lot 59, *in the line of said Lindsey and Roseboom's tract aforesaid;* thence *along said line* south 51 degrees 48 minutes east 42 chains, to the place of beginning; containing 128 acres of land." The deed contained the usual covenants of *seisin* and for *quiet enjoyment.* In his declaration the plaintiff set forth the above deed and sundry mesne conveyances, showing the title of May to have come to him by deed executed by one M. Phenis, junior, bearing date 17th September, 1828. He then averred that after he went into the possession and occupancy of the premises, he was *evicted* by one James Jackson, on the demise of George Clarke and Josiah Stearns, who at the time of the eviction had lawful right and title to the premises, and expelled him by due process of law. The defendant pleaded, 1. *Non est factum;* 2. Seisin in himself, and a denial of seisin in James Jackson, George Clarke and Josiah Stearns, or either of them; and also denying that the plaintiff was evicted.

On the trial of the cause, it was proved that in May, 1830, a judgment was recovered in this court against Bates in an action of ejectment, in which James Jackson (on the demise of George Clarke and Josiah Stearns) was plaintiff. The quantity of land recovered was 19 acres and $\frac{32}{100}$ of an acre. The plaintiff in an ejectment suit, showed his right to recover by proving that he was the *owner of the land in Lindsey and Roseboom's patent,* lying to the south of and adjoining *lot No.* 60, *in Livingston's patent;* that the *true division line* between the two patents was *five chains and ninety links* north of the line which have been claimed by Bates as the south boundary of the Livingston patent, and up to which he had held possession, and that consequently all the land north of the true division line between the two patents was held by Bates *without title.* On the trial of the cause, *May,* the grantee of Tymason, was called by the plaintiff as a witness, and being duly released by his own grantee, by the plaintiff and by the intermediate grantees, he was admitted by the circuit judge as a competent witness, although objected to by the defendant; he testified that during his negotiation with Tymason for the purchase of the *southerly moiety or half part of lot No.* 60, *disting-*

uished as the subdivision No. one, Tymason showed him an oak tree, which he said was *the south-east corner of lot No.* 60, and pointed out to him a line running from thence west, consisting of a *tree fence* and *marked trees,* which they traced until they arrived at a stream, which another witness, a surveyor, stated to be about 12 chains from the western boundary, of lot No. 60. The line thus pointed out by Tymason was the line which was proved in the ejectment suit to be *five chains and ninety links* south of the *true division line* between the Livingston patent and the Lindsey and Roseboom patent. *May* further testified, that he always considered the line pointed out by Tymason as the southern boundary of his lot, and the true division line between the two patents, until a survey was made shortly previous to the ejectment suit. A witness who lived on subdivision No. 2, from 1816, for about 8 years, testified that he always supposed that the line running west from the oak tree was the true division line between the two patents ; and another witness testified that he knew subdivision No. *one,* previous to its occupation by Tymason, that he understood the oak tree to be the south-east corner of Tymason's lot, and always understood that the line running west from that tree was the north line of the Lindsey and Roseboom patent ; he further testified that the force on the line running west from the oak tree was made by a tenant of *George Clarke,* who held under the Lindsey and Roseboom patent. At the time of the trial of the ejectment suit, Tymason himself expressed his belief that the line running west from the oak tree was the true division line between the two patents. It was also proved that the marks upon the oak tree were 40 years old, and those upon a beech tree, the corner of the division line between the subdivision *one* and *two,* were 50 years old ; which division line between those subdivisions, was clearly established ; and, measuring from it to the line running west from the oak tree, the two portions will contain about an equal quantity, that is, each about 128 acres ; but if subdivision No. *one* extends no farther south than the true division line between the two patents, it will contain only about 100 acres. The plaintiff also read in evidence a deed from *representatives of William Livingston,* to the defendant, bearing date 7th March,

1808,describing the *southerly moiety or half part of lot No.* 60,in the *same times* as those used in the deed declared upon. In addition to objecting to the competency of *May* as a witness, the defendant objected to all *parol evidence* on the part of the plaintiff,adduced by him for the purpose of *specifying the premises* intended to be warranted by the defendant; but the objection was overruled, and the testimony above stated received.   When the plaintiff rested, the counsel for the defendant moved that the plaintiff be nonsuited, contending that though the true division line between the *Livingston patent* and the *Lindsey and Roseboom patent* should be conceded to be where it was claimed to be by the plaintiff, and that the plaintiff,had been evicted from the land possessed by him lying south of that line, it would not follow that the covenants in the defendant's deed were broken; because, by that deed the lands granted were lands lying in *Livingston's patent,* and no failure of title to, or eviction from lands in *that patent* had been shown; which motion was granted by the judge, and the plaintiff was accordingly nonsuited.   The plaintiff moved to set aside the nonsuit.

*J. D. Hammond & A. Taber*, for plaintiff.

*K. Miller*, for defendant.

*By the Court,* NELSON, J.   The deed from the defendant to May conveys a certain parcel of land, known and distinguished as the farm or subdivision No. *one* of lot No. 60,and such subdivision is described as beginning *at the south-east corner of the said lot No.* 60, *in the line of Lindsey and Roseboom's tract,* and running thence, &c.   The whole question turns upon the location of this corner,the starting point; and the only difficulty attending it grows out of the contradictory terms used in the deed when applied to the objects therein designated.   The *south-east corner of lot No.* 60 is well ascertained point on the ground,but it does not correspond with the residue of the description, viz. " in the line of Lindsey and Roseboom's tract."   The *south-east corner* is five chains and ninety links south of the *line* of Lindsey and Roseboom's tract. The question then arises which part of the description shall

control, according to the evidence in the case tested by legal principles?

It is clear, had the *patentees* given the deed, we would have been bound to consider the *south-east corner of No.* 60 as the controlling description. Having surveyed the lot, or caused it to be surveyed, it would not have been permitted to them to allege that a mistake had occurred in running the south line of the lot, and fixing the south-east corner, and thus escape from liability to their grantee by resorting to the residue of the description, which was chiefly imaginary. The actual location, that is the ground lines and corners, would, as to them, have been conclusive. Any other construction would be a gross fraud upon the purchaser, as he had a right to look to the actual location or ground lines of the lot, and to believe, from the description in the deed, that such lines were designated and intended as the boundaries of the lot. 8 *Wendell*, 190. This view of the case is strictly applicable also to conveyances by the like description executed by an *assignee* of the patentees, because every reason which upholds it, exists with equal force to him; and peculiarly does it apply to the defendant in this case, as it appears that his deed was obtained from the heirs and devisees of one of the patentees. Besides, his remedy upon his deed, according to the above view, would be perfect, in case of an eviction, provided the deed contained the proper covenants. It is manifest, from the evidence, that an actual location of lot No. 60 was made, by marking lines and establishing corners, previous to the deed from the heirs and devisees to the defendant; and it is proved that such corners and lines existed, and were distinctly to be seen when the defendant conveyed to May.

There is another aspect of this point of the case, which also I consider conclusive against the defendant. When the defendant conveyed to *May*, and long after that time, the *south line* of No. 60, as possessed by May, was the *reputed north line of Lindsey and Roseboom's tract*—so understood and believed by the occupants on both patents, and by the defendant himself. Now, coupling this fact with the description in the deed, and there is no discrepancy or difficulty in it, because the south line of No. 60, as marked on the ground, was at

ALBANY,
Jan. 1835.

Bates
v.
Tymason.

the time believed by the grantor himself to be the north line of Lindsey and Roseboom's tract, and it probably, for that reason, was mentioned to identify more perfectly the south line and south-east corner of lot No. 60.    It is auxiliary to the first and principle description, and should be construed in order to effectuate the intent of the parties, in reference to the division lines and actual localities at the time of the conveyance; not to what would have been those division lines, had they been ascertained by an accurate survey.  A previous actual location by the grantor, either by occupancy or marking corners and ground lines, should at least as to him be decisive where the description of the premises in his deed is equivocal; and where a line is referred to by way of description, one existing in fact, known, and undisputed, should prevail over an imaginary line, resting only in contemplation of law, although the latter be the true line.  All grants are supposed to be made upon an actual view of the premises by the parties; and for this, among other reasons, natural or artificial objects control courses and distances given in a deed.  8 *Wendell*, 190.    The south-east corner of No. 60. being thus ascertained and settled, the whole case is disposed of; the parcel from which the plaintiff was evicted was included in the deed and is of course within the covenants concerning the title.

It is true, that starting at the corner of No. 60, as pointed out by the defendant, and following the courses and distances given in the deed, the line coming down the west side of the lot would stop short of the distance given for it, because lot No. 59 rested upon the true north line of Lindsey and Roseboom's tract, the line of that tract having *there* been actually run and marked.    But this difficulty is not sufficiently stubborn to control the decisive testimony as to the *place of beginning*.  When one of two descriptions must give way, and that such must be the case here there can be no doubt, it is impossible to hesitate, if the view before taken be sound, in determining which of the descriptions in this deed shall yield.  As was said by Mr. Justice Sutherland, when this case was under consideration upon a former occasion, "When the *place of beginning* given in the deed is certain, or can be clearly ascer-

tained by proof, the location must be made by commencing at such corner, although in consequence thereof the location cannot be made to correspond with all the subsequent courses and distances in the grant," citing 5 *Wendell*, 142, and 8 *id.* 183.

It may well be inferred from the testimony, that when lot No. 60. was subdivided in 1794, the subdivision (which must have been made under the direction of the patentees or their heirs or devisees) was made upon the assumption that the line located by the parties was the true south line of the lot. The farm, or subdivision No. *one*, described as the *southerly moiety* or *half part* of the lot would otherwise fall short upwards of 20 acres of its proper complement. According to the *line assumed* as the true line, the division was nearly equal.

It was objected on the trial that May was an incompetent witness. He was the immediate grantee of the defendant, and conveyed to Hammond, with warranty, who conveyed to Phenis, and Phenis to the plaintiff. Previous to the trial, Hammond, Phenis and the plaintiff released May from all claims to which they might be entitled for damages, in consequence of the breach of the covenants in his deed to Hammond. These releases divested him of all interest in the subject matter of this suit. He therefore was not an incompetent witness on the ground of *interest ;* he stood in the same relation to the parties to the suit as he would have done had his deed to Hammond merely contained a release of his title to the premises, or it had been what is commonly called a quit claim deed.

It was also objected that the declarations and acts of the defendant, at the time when *May* was about to make his purchase, ought not to have been received in evidence. The important fact testified to by May was, that the defendant, at or about the time of his purchase, *showed him the line then known as the north line of Lindsey and Roseboom's tract,* which line it was subsequently ascertained was *five chains* and *ninety links* south of the true line. We think this testimony was not only competent, but highly inportant, as it shows what line the parties had in view when they speak in the deed of the north line of Lind-

sey and Roseboom's tract. The judge submitted the question of the credibility of the witness to the jury. The objection, therefore, to his testimony, if it amounts to any thing, is connected with, and makes a part of the general objection, that *no parol testimony* of location, under the conveyances given in evidence in the cause ought to havè been admitted—an objection which we cannot deem it necessary to discuss, further than has been done in the general view taken of the questions arising in this case.

Upon the whole, after a very careful consideration of the case, and the principles applicable to it, we are of opinion that the plaintiff was entitled to recover, and that the nonsuit ought to be set aside, and a new trial granted.