### THE PEOPLE *vs.* STEPHEN VAN RENSSELAER.
### THE SAME *vs.* WILLIAM P. VAN RENSSELAER and others.

In an action brought by the people of the state, to recover land, an answer denying the plaintiffs' title, seisin and right of possession, but admitting that the defendant has entered into or taken possession of, and occupies, possesses, and enjoys the premises, and claims and holds the same adversely to the plaintiffs ; alledging that no right or title has accrued to the plaintiffs within forty years ; that neither the plaintiffs nor those under whom they claim have received the rents and profits of the land within forty years ; and that no verdict, judgment or decree has been given for such land, in favor of the people or their grantee, &c. within forty years, is bad on demurrer.

So, also, as to an answer alledging that no right or title to the premises accrued to the people within forty years before the commencement of the action; that neither they, nor those under whom they claim, have received the rents and profits within forty years; and that no verdict, judgment, or decree has been given for the premises, in favor of the people or their grantee, within forty years.

The people of this state are the owners of all the lands within its limits, that have not been granted to others.

Upon our independence, the people succeeded to the title to all the real property belonging to the crown; and while it remains in them it is in many respects subject to the rules of law governing the same previous to the proprietary change.

These rules differ from those incident to land owned by the subject, in several important particulars. One of which is that the state can not be disseised.

The principle of the common law, that no laches can be imputed to sovereignty, and that it is privileged from the statute of limitations, is applicable, as a

The People *v.* Van Rensselaer.

general rule, to the state sovereignties of this country; subject to the modifications made by statute.

Where the lands of the state have always been vacant, until some recent intrusion, the people are not bound to show a title which has accrued, or was first acquired by them, within forty years, or the actual perception of profits within that period.

In an action in the nature of an ejectment, brought by the people, the plaintiffs will be presumed to have the title; and until that is shown to be out of them, the presumption being that the possession of the defendants is not adverse, their occupancy will be held to be in subordination to the title.

And unless the defendants, or those under whom they claim, have held or occupied the land in question for a period of forty years, they can not avail themselves of the statute which declares that the people will not sue for lands, &c. by reason of any right or title not accruing within forty years, unless they have received the rents and profits within that time.

As against the people, the defendant must show title in himself, or a continuous possession of forty years. A general denial of the plaintiffs' title is not sufficient.

Although, under the code, a defendant may controvert, generally, the allegation in the complaint, yet he must do it issuably.

THESE causes were argued on demurrers to the answers. Both suits were brought by the attorney general of the state; the first, for land in the town of Guilderland in the county of Albany, particularly described in the complaint, and said to contain over 134 acres; and the other, for another parcel lying in the town of Poestenkill in the county of Rensselaer, also particularly described in the complaint, and said to contain 150 acres. The complaint alledged that plaintiffs had in themselves good title, and were the true owners in fee simple, and were entitled to the immediate possession and enjoyment of the lands, and that the defendants had entered into, and taken possession of, and then occupied, possessed and enjoyed the land, contrary to the ownership and right of possession of the plaintiffs; they the said plaintiffs claiming to be rightfully seised and the true owners of said land; and prayed that the right, title and estate to and in said lands, and the possession thereof, might be adjudged to the plaintiffs, and possession thereof delivered, &c.

The answer in the first cause above entitled was as follows: "The defendant Stephen Van Rensselaer, by Jenkins and Mc Martin his attorneys, answers the plaintiffs' complaint in the

action, and denies that the plaintiffs have in themselves, or at the time of the commencement of this action had in themselves, good title to the lands claimed and described in said complaint, and denies that the plaintiffs are or then were the true owners in fee simple of said lands, or entitled to the immediate possession or enjoyment of the same or any part thereof. And the defendant admits that he has entered into or taken possession of and occupies, possesses, and enjoys said land, and claims and holds the same adversely and contrary to the pretended title, ownership and right of possession of the plaintiffs alledged in said complaint, and denies that the plaintiffs are rightfully seised and the true owners of said land.

And the defendant further answering says and alledges, that no right or title of the plaintiffs to said lands has accrued within the space of forty years before this action was commenced, and alledges that neither the said plaintiffs, nor those under whom they claim, have received the rents and profits of said lands or any part thereof within the said space of forty years; and further alledges that no verdict, judgment or decree in any court of record in this or in any competent court has been given for such lands within said space of forty years before the commencement of this action, either in favor of said people or of any patentee or grantee, his or their heirs or assigns, claiming by or under said people by virtue of any patent or grant from the said people, made upon suggestion of concealment or wrongful detaining or defective title or any other suggestion whatever." To this answer the attorney general demurred, and specially assigned the following grounds: "The said answer does not state that the said plaintiffs were more than forty years before the commencement of this action, or at any other time, disseised of the said farm or parcels of land or any part thereof, nor does the said answer state that the said defendant, or those under whom he claims the said farm or parcel of land, or any other person or persons other than the said plaintiffs, more than forty years before the commencement of this action, held the said farm or parcel of land or any part thereof, or that they have thence hitherto held the same. Nor does the said answer

The People *v.* Van Rensselaer.

state that the said defendant, or those under whom he claims
the said farm or parcel of land, or any other person or persons,
more than forty years before the commencement of this action
or at any other time, held the said farm or parcel of land or
any part thereof adversely to the said plaintiffs or under any
color or claim of title."

The answer in the second cause was as follows: "These
defendants answering the complaint of the people of the state of
New-York by Ambrose L. Jordan, their attorney general, say and
alledge that no right or title to the lands, tenements, and prem-
ises described in the said complaint accrued to the said people
within the space of forty years before the commencement of this
action, and that neither the said people nor those under whom
they claim have received the rents and profits of the said lands,
tenements and premises, or of any part thereof, within the space
of forty years; and further, that no verdict, judgment, or decree
in any court of record or in any other court in this state or in
any other competent court hath been given for the said lands,
tenements and premises, in favor of the said people or of any
patentee or grantee of the said people claiming by or under
them the said people, by virtue of any letters patent or grants
from the said people made upon any suggestion of concealment
or wrongful detaining or defective title within the said space of
forty years before commencing this action."

To this answer the attorney general demurred, and specially
assigned the following grounds: "The said answer does not
state that the said plaintiffs were more than forty years before
the commencement of this action, or at any other time, disseised
of the said lands, tenements and premises, or any part thereof,
nor does the said answer state that the said defendants or those
under whom they claim the said lands, tenements and premises,
or any other person or persons other than the said plaintiffs,
more than forty years before the commencement of this action,
held the said lands, tenements and premises, or any part there-
of, or that they have thence hitherto held the same, nor does
the said answer state that the said defendants or those under
whom they claim the said lands and tenements and premises,

The People *v.* Van Rensselaer.

or any other person or persons, more than forty years before the commencement of this action, or at any other time, held the said lands, tenements and premises, or any part thereof, adversely to the said plaintiffs, or under any color or claim of title.

Mr. *Stevens,* for the attorney general, argued both causes on the part of the plaintiffs.

And Mr. *Jenkins* and Mr. *N. Hill, Jun.* for the defendant S. Van Rensselaer, and Mr. *J. C. Spencer* for the other defendants.

Hand, J. I shall consider these cases together ; for although the pleas are not alike in all respects, one presents all the questions arising on the other, and the difference I shall notice in the proper place. .

It was admitted and cannot be denied, that the people of this state are the owners of all the lands within its limits that have not been granted to others. (*Const. art.* 1, § 11. 1 *R. S.* 718, § 1. *Plow.* 98. 2 *Bl.* 51, 3, 9, 60. 2 *Kent,* 320. 3 *Id.* 377, 487. *Wendell* v. *People,* 8 *Wend.* 188. *People* v. *Denison,* 17 *Id.* 312. *Jackson* v. *Ingraham,* 4 *John.* 163. *Jackson* v. *Waters,* 12 *Id.* 365. *Co. Lit.* 1. *The West River Bridge Co.* v. *Dix,* 6 *How.* 507. *The U. S.* v. *Chicago,* 7 *Id.* 185. *Chipman on Prin. of Gov. b.* 4, *ch.* 2.) Where it is not known of whom lands are holden, it is presumed they are holden of the king. (1 *Cruise's Dig.* 13. *Booth on Real Act.* 135.)

It was said on the argument, that the clause of the constitution declaring that "the people of this state in the right of sovereignty are deemed to possess. the original and ultimate property in and to all lands within the jurisdiction of the state, and all lands the title to which shall fail from a defect of heirs, shall revert or escheat to the people," is not a declaration that the people are now the owners, but that they were, and also have the reversion and right of escheat. Neither the reversion, nor the right of escheat, raises a presumption in favor of a present right of possession. But the authorities above cited go farther. They declare that the state has succeeded to all the rights of the crown. (*And see The People* v. *Thurman,*

3 *Cowen*, 16; *The People* v. *Herkimer*, 4 *Id.* 345.) And that
"the king is the universal lord and original proprietor of all the
lands in his kingdom, and that no man doth or can possess any
part of it, but what has mediately or immediately been derived
as a gift from him, to be held upon feudal services." And our
organic law, as we have seen, declares that the people possess
the "original" property in all the lands. The last qualifica-
tion, "to be held upon feudal services," is abrogated by the same ·
instrument; and indeed had been abolished before, by statute;
but that does not affect the clause we are considering. (*Const.
of N. Y. art.* 1, §§ 11, 13. 1 *R. S.* 718, § 3. *An act concern-
ing tenures, passed Feb.* 20, 1787.)

Upon our independence, the people succeeded to the title to
all the real property belonging to the crown; and while it re-
mains in them, it is in many respects subject to the rules of law
governing the same before the proprietary change. These rules
differ from those incident to land owned by the subject in seve-
ral important particulars, one of which is that the state cannot
be disseised. Disseisin is the wrongful entry upon, and ouster
of, one seized of the freehold. (*Co. Litt.* 277. *Williams* v.
*Thomas,* 12 *East,* 141. *Toller* v. *Burtis,* 6 *John.* 217. 1 *Saund.
Rep.* 319, *d, k.*) And the king, by reason of his ubiquity, and
of his prerogative, cannot be disseised. The authorities upon
this point are very numerous. (*Kent, C. J. in Jackson* v. *Win-
slow,* 2 *John.* 80. *Elvis* v. *Archbishop of York, Hob.* 322.
*Co. Litt.* 239 *a, n.* 5. *Booth on Real Actions,* 285. 2 *Bl.* 257.
*Saville,* 68. 17 *Vin.* 176. 6 *Com. Dig.* 64, *Prerogative,* 71.
5 *Bac.* 562, *Prerog. E.* 6.) As then the king (or people) could
not be disseised, it followed that he could not bring ejectment.
He could bring no action which supposes a dispossession. "For
the king cannot be disseised, but all intruders are but trespass-
ers to him." (*Elvis* v. *Archbishop of York, supra.* 3 *Bl.* 257.
*Adams on Eject.* 79. 2 *Saund. Rep.* 63, *c. u. k.*) An abator
or intruder ousteth no one. (*Runn. on Eject.* 13.) One in
possession cannot bring ejectment. (*Jackson* v. *Hakes,* 2 *Caines,*
335.) Of course, I speak of the rights of the people before the
law was changed by statute. The king's lessee could bring

ejectment. (*Adams on Eject.* 79. 3 *Bl.* 257, *n. Lee* v. *Norris, Cro. Eliz.* 331.) But in case of a trespass, or entry upon the lands of the king, without title, the attorney general filed an information of intrusion, in the exchequer. (3 *Bl.* 261. 5 *Bac.* 566. *Prerog. E.* 7. *Pl. Com.* 547.) The information for the king is what, for a common person, is called a declaration. (2 *Lill. Abr.* 75.) True, it was not intrusion, in some cases, until office found; as in case of a forfeiture, or condition broken, or idiocy, &c. (5 *Bac. Abr.* 564. *Finch* v. *Throckmorton, Moor,* 291.) Our statute permits an action of ejectment in case of escheat. (1 *R. S.* 282, § 1.)

Notwithstanding ejectment, as we shall see, may now be maintained by the people, it may be important to understand the nature of the proceeding known as an information of intrusion. It is said not to be " real but personal, and to be resembled in all points to trespass ; for it supposes the king in possession, as an action of trespass supposes a subject ; and the land is not demanded or recoverable, but damages only, as in trespass ; and the defendant is to be fined *si convincatur de intrusione* as in trespass, if he be found guilty of entry *vi et armis.*" (17 *Vin.* 219.) And to this point, Viner cites the argument of Moore for the defendant in *Perrot's case,* against whom information of intrusion was filed by the attorney general of Elizabeth. (*Moor,* 375.) And to the same effect is a case in *Saville's Reports,* (*Sav.* 68 ;) and also, *Friend* v. *The Duke of Richmond,* by Hale, Chief Baron. (*Hard.* 460.) But the pleadings in this proceeding have perhaps the most important bearing upon the case now under consideration. The information may be as general as in trespass. (*Manwood, Ch. B., Sav. R.* 48. *And see Id.* 28.) And a form given in Rastell's Entries is not very special, though it gives the name of the close, and a very brief statement of the manner the queen became seised. (*Rast. Ent.* 412.) On the other hand, at common law the king, by his prerogative, might put the defendant upon showing his title specially ; and if he pleaded not guilty, he should immediately be put out of possession. (5 *Bac.* 567, *Prerog. E.* 7. *Com. Dig. Prerog. D.* 74.) In a form in Rastell's Entries, the information

charged the intrusion to have been *vi et armis,* and the defend-
ant pleaded not guilty to that, and specially as to the intrusion,
&c. (*Rast. Ent.* 412, 13.) The defendant was not bound to
plead more than showed he had title. But in doing that, it
would seem he must be more certain and direct than in ordinary
suits. (17 *Vin. Ab.* 251. *Attorney General* v. *Meller, Hard.*
451. *Sav.* 48. 5 *Bac. Ab.* 567.)

The crown had another advantage. The attorney general
could traverse the title of the defendant, and the king had judg-
ment unless the defendant showed good title. And if the king
had been once seised, it seems he would hold the land against
all having no title ; although it were found the king had no title,
and the defendant had possession before him. (*King* v. *Bishop
of Worcester, Vaughan,* 64.) So in Lord Berkley's case, on
information of intrusion, the defendant pleaded that James Lord
Berkley was seised of the entire manor, in his demesne as of fee,
and died so seised ; and then set out title by descent, &c. to the de-
fendant. The queen's attorney denied that James Lord Berk-
ley died seised ; and the defendant took exception and said that
he ought to have said that " the queen was seised, without this
that said James died seised." But all the court were of a con-
trary opinion in case of the queen ; *and that she need not main-
tain her possession, for it will be intended that that continue.*
Though it was different with a common person. (*Sav. Rep.* 66.
*And see the same cause on page* 64, *Id. and a note of it in* 17
*Vin.* 219.) This difference in pleading is sometimes put upon
the ground of office found ; but I have already remarked upon
this. It is hardly possible to use stronger language than is used
in our statute, and now in the constitution, in favor of the right
of the people. Office found is not necessary in many cases, and
there is nothing in this case showing it to be one in which that
would be required in England. Besides, as we have seen, if the
king be once seised, the defendant must show a good title,
whether the king has any or not. By the statute of 21 Jac. 1,
ch. 14, the defendant was allowed to plead not guilty if the king
or those claiming under his title had been out of possession, or
had not received the profits of the land within 20 years before

the information of intrusion was filed, and should not be ousted of his possession until the title were found or adjudged for the king. But under our new system, that provision is inapplicable, and previous to that had no force here.

Another familiar principle was, that no laches could be imputed to sovereignty; and it was privileged from the statute of limitations. That was so in England, and is applicable, as a general rule, to the state sovereignties of this country. (*Co. Lit.* 57 *b.* 6 *Bac. Abr.* 562, *Prerog. E. D.* *U. S.* v. *White,* 2 *Hill,* 60. *Ball. on Lim.* 69. 1 *Cruise's Dig.* 284. 1 *Cruise on Fines and Rec.* 287.) So that, formerly, no length of possession would be a defence against the claims of the people, except in certain cases to raise the presumption of a grant. (3 *Cruise,* 558. *Eldridge* v. *Knott, Cowp.* 214. *Matt. on Pr. Ev.* 6. *Mather* v. *Ministers Tr. Church et al.* 3 *S. & R.* 509.) Adverse possession was therefore not properly predicable of crown property. And this was a natural consequence where no statute of limitations affected the crown, and the occupancy was presumed to be in subordination to the legal title. (*Podger's case,* 9 *Co.* 106 *a.* 3 *Cruise's Dig.* 554. 2 *R. S.* 294, § 8.) And indeed where the suit by the crown is now barred under the statute, by the length of time, it is doubtful whether in England the intruder himself can bring any action for an injury to the property. (*Goodtitle* v. *Baldwin,* 11 *East,* 488. 1 *Chit. Pl.* 161, *n.*)

Such being the common law, the next inquiry is, what changes have been made by statute. And firstly as to the form of action.

By " an act for the sale of lands mortgaged to the people of this state, and for other purposes," passed February 17th, 1806, after reciting that " whereas doubts have arisen whether an action of ejectment can be sustained by the people of this state; for the removal thereof," it was enacted " that every action of ejectment already commenced or hereafter to be commenced, by the people of this state, shall and may be sustained and prosecuted to judgment and execution in the supreme court of this state, in like manner as if such action had been commenced by an

The People *v.* Van Rensselaer.

individual, any law or usage to the contrary notwithstanding." And this provision is incorporated into "an act concerning ac-. tions of ejectment commenced by the people of this state, and certain duties of the attorney general," passed April 5th, 1813. (1 *R. L.* 484.) And also without the preamble in our revised statutes. (1 *R. S.* 180, § 10.) The words "sustained and prosecuted," undoubtedly refer merely to the use of the action, and the practice. It never was intended, nor has it ever been supposed, to abridge the rights of the government. The "consent rule," and the general issue, as a matter of course, followed. The revision of the statutes in 1830, abolished the former, but the defendant was still allowed to plead the general issue. It was equally a matter of form that the plaintiff in all cases set out his title and an ouster in general terms. The proceedings in *Jackson, ex dem. The People of the State of New-York* v. *Wendell,* were in the old mode. (5 *Wend.* 142. *S. C.* 8 *Id.* 183.) And those in *The People* v. *Denison,* under the revised statutes. (17 *Id.* 312.) Ejectment had thus become a common and almost universal mode of recovering real property; simple in its pleadings and practice, putting the parties fairly upon trial, upon the evidence. But the code has abolished that action, *eo nomine*, at least, and swept away all the forms. Perhaps a plea, that the plaintiff did not own and had no right to the possession of the land, would now be good in a case between individuals, if the complaint were general. It would be unjust for the plaintiff, by general allegations, to insist upon a view in detail of the defendant's title. And besides, in suits between individuals, the plaintiff must rely upon the strength of his own title, and must show possession actual or constructive, within 20 years. (2 *Saund. R.* 63, c. *k.*) But it is a grave question how far, as to matter of substance, this new system revives the old principles of pleading. In early times, the party had to resort to the form of action, real or possessory, which was adapted to his grievance; and, as every lawyer knows, they were very numerous. Those forms are all expunged from our legal proceedings. But if the titles to lands are to be settled by special pleadings, of necessity resort must be had to many of the principles found

in those old precedents. And this case, in some degree, illustrates this remark.

The old common law rule in relation to laches, to which we have adverted, has also undergone material variations by statute. The first innovation was by the statute of 21 Jac. 1, c. 2, by which it was declared that the king shall not thereafter sue any person for lands, nor make any claim thereto, by reason of any right or title accrued 60 years past or more, and then *in esse,* unless he or his predecessors, or some other under whom he claimed, had been answered by force of such right or title the rents, issues and profits thereof within 60 years before the beginning of that parliament; or unless the same had been duly in charge to the king within 60 years, or had stood *insuper* of record within that time. And that all persons, according to their several estates and interests which they had or claimed to have respectively, should thereafter quietly hold against his majesty, his heirs and successors claiming by any title, accrued or grown 60 years past, or above, and then *in esse,* all lands which they or their ancestors, or those from, by, or under whom they claim, had held and enjoyed, or taken the rents, revenues, issues or profits thereof by the space of 60 years, unless his majesty had been answered, &c. (as before.) *See* 17 *Vin.* 221.) This law by lapse of time became inoperative, and the statute of 9 Geo. 3, ch. 16, (1769,) called the nullum tempus act, was passed. This provided that the king should not sue for lands or make claim to the same by reason of any right or title which had not accrued or grown within sixty years before suit, unless he had been answered the rents, &c. within that time, or the lands had been in charge, or stood *insuper* of record, within that time. Our statute, applicable to this case, was passed April 8th, 1801. (1 *K. & R.* 562, *and* 1 *R. L.* 484. *And see the original act,* 2 *J. & V.* 260; *and our present statute,* 2 *R. S.* 292.) That statute declares that the people will not sue for lands, &c. or the issues or profits thereof, by reason of any right or title of the people to the same, which shall not have accrued within the space of forty years before suit, unless the said people, or those under whom they claim, shall have received the rents and profits,

The People *v.* Van Rensselaer.

or of some part thereof, within the space of forty years; and in any case where such title shall not have accrued within the time aforesaid, unless such rents and profits shall have been received as aforesaid, those holding such lands shall freely hold and enjoy the same against said people, and against all persons claiming by or under them. In the case of *William. P. · Van Rensselaer and others*, the answer is almost literally in the words (negatively) of the statute. The defendant Stephen Van Rensselaer concludes his answer in nearly the same manner.

It will not be seriously contended, that, where the lands of the state have always been vacant until some recent intrusion, the people must fail unless they show a title which has accrued, or was first acquired by them, within forty years, or the actual perception of profits within that period. Such a rule would put all our public lands in jeopardy, and in the power of the first squatter who may be disposed to enter. And it would be a narrow construction to say, because the lands are wild, the state is presumed to have received the rents and profits. That is hardly more than a quibble. The term "rents and profits" is well understood. No doubt one may receive the profits of land by his own occupancy. So "or" and "and" are sometimes synonymous. (*Smith on Const. and Stat.* 732, 3.) And if rents *or* profits were received, it would be a compliance with the statute. They often mean the same thing; though rent is a tribute which issues out of land, as a part of its actual or supposed profits; and the word "profits," means yearly "profits." (*Ivy v. Gilbert*, 2 *P. Wms.* 13. 2 *Ves. jun.* 480, *and notes.* 1 *Atk.* 506.) It would be an inference from an inference, first to presume that the state is in possession because it has title, and then presume it to be in the receipt of profits because of such possession. The real intention is to govern, and no interpretation should be given which takes away the public rights. (*Mag. Coll. case*, 11 *Co. R.* 73. *Dwarris on Stat.* 690, 1, 2.) The reasonable construction is to place the case upon the possession of the defendant or his predecessors. Actual possession by the people is literally impracticable, and so is possession of all our wilderness by tenants. Such a construction will save the rights

of the people, do no injustice to individuals, and is consistent with general principles. The people are presumed to have the title. And until that is shown to be out of them, the presumption being that the possession is not adverse, the occupancy is in subordination to the title. The statute, as will be seen by comparison, is substantially a copy of a part of the act of 9 Geo. 3. There the crown had no such tracts of wild lands. Yet an actual possession of sixty years is considered necessary to bar the king. The language of Lord Ellenborough, in *Goodtitle ex dem. Parker* v. *Baldwin*, is, that the "statute only takes away the right of suit of the crown or those claiming from the crown, against such as have held an adverse possession against it for sixty years." (11 *East*, 495.) And Blackstone says, "so that a possession for sixty years is now a bar, even against the prerogative, in derogation of the ancient maxim *nullum tempus occurrit regi*." (3 *Bl.* 307.) And to the same effect are Cruise and Adams. (3 *Cruise's Dig.* 559. *Adams on Eject.* 78.) In *Wendell* v. *The People*, (8 *Wend.* 183,) and *The People* v. *Denison*, (17 *Id.* 312,) it was decided that on proving the premises had been vacant within forty years, *prima facie*, the people were entitled to recover. Thus by breaking in upon the possession of the defendant, or of those under whom he claims, for a day, he is put upon the strength of his own title. Showing clearly that, as to the statute, the question is upon the defendant's possession. I have not been able to discover any authority or principle of law requiring the people to show even this; but I think these cases conclusive against the construction contended for by the defendants. The phrase in the statute, "the persons, &c. holding such lands," may be understood to mean those who, or whose predecessors, have possessed them during the period of forty years. One never loses his land unless there is a continued and adverse possession. (*Butler* v. *Phelps*, 17 *Wend.* 642. *Jackson* v. *Vail*, 7 *Id.* 125. 24 *Id.* 587. *Little* v. *Heaton*, 2 *Ld. Ray.* 750. *Ziller's Lessee* v. *Eckert*, 4 *How. U. S. R.* 289.) And it can not be supposed that the legislature intended to adopt a rule, at once novel and dangerous to the interests of the state.

But it is contended that, admitting this to be the construction, an answer in the words of the statute means what the statute means; and all this is matter of evidence òn the trial. This seems plausible; but, as a general rule, will not bear the tests of the principles of pleading or of practical use. In criminal cases, and in penal actions, sometimes it is sufficient to charge the offence in the words of the statute; and sometimes it is not. (*The People* v. *Taylor*, 2 *Denio*, 91. *U. S.* v. *Mills*, 7 *Pet. Rep.* 142. *U. S.* v. *Gooding*, 12 *Wheat.* 460. *Arch. Cr. Pl. and Ev.* 47. *People* v. *Barton*, 6 *Cowen*, 290.) Particularly after verdict. (*Wright* v. *Horton*, 1 *Stark. R.* 400.) And this is sometimes so in civil cases. But courts will take notice of the privileges of the state. (1 *Chit. Pl.* 245.) And though the act be public, the defendant should state those facts which bring his case within it. (2 *Saund. R.* 155, *n.* 4.) And it has been held in several cases, that it is not sufficient to plead the statute of limitations in the words of the statute. For instance, where the government becomes possessed of, and prosecutes a claim, and the statute is interposed, as the government is privileged from the statute, the defendant must plead that the cause of action accrued six years before the plaintiff acquired title to it. Mr. Justice Cowen intimated that this was not the case where the statute had begun to run before the transfer. (*U. S.* v. *White*, 2 *Hill*, 59.) But the remark was *obiter* in that case; and where the payee and owner of a note became *felo de se*, in a suit thereupon by the king, a plea that the cause of action did not accrue within six years before suit, was held bad, and judgment given *non obstante veredicto*. It should have been that the cause of action did not accrue within six years before the death of the former owner; for after that the statute ceased to run. (*Lambert* v. *Taylor*, 4 *B. & C.* 138.) And in a case where a criminal charge was set out in an affidavit in the words of the statute, although the court, with hesitation, in a collateral suit, held that it gave jurisdiction, they spoke of the practice as highly reprehensible. (*Mills* v. *Coltett*, 6 *Bing.* 85.) The facts must be set forth according to their legal effect. (*Henderson* v. *Henderson*, 3 *Denio*, 314. *Goodrich* v. *Pendleton*, 3

*John. Ch. R.* 391. *Peake* v. *Carrington,* 2 *B. & B.* 399.) So in this case, unless the defendants, or those under whom they claim, had held or occupied the land in question forty years, the statute would not avail them. This fact is entirely omitted in the answer. Suppose the attorney general had gone to trial upon this answer, would not the defendant have insisted he had proved his plea? Had they pleaded bare possession for forty years, perhaps that alone would have been a defence, or at least, have changed the *onus,* although the possession was not alledged to be adverse. The people in their sovereignty have said, they will not sue where individuals have possessed it that period; though the elementary writers and decisions speak of an *adverse* possession. That was the language in *Wendell* v. *Jackson* and *The People* v. *Denison,* and of several of the authorities before noticed. But this point need not be anticipated.

In addition to the statute, the answer of Stephen Van Rensselaer denies that the plaintiffs had good title; denies they were the true owners of the lands or entitled to the possession; and admits that he has taken possession and occupies, and enjoys the land; and claims and holds the same adversely to the plaintiffs. This in substance is only that the plaintiffs have no title, and that the defendant, at the time of commencing the suit, held adversely. Adverse possession at the time the suit is commenced, alone, never prevails. It is time that gives it efficacy. Nor is the general denial of the plaintiff's title sufficient. We have seen that, as against the people, the defendant must show title in himself, or a continuous possession of forty years. Every plea should be so pleaded as to be capable of trial. (*Frary* v. *Dakin,* 7 *John.* 78.) The people are declared to be the original and ultimate owners of all the lands within the state. The defendants merely deny this in the most general manner, which is in truth only a denial of a presumption of law. Under the code I think this insufficient, in a suit by the people. The defendant may controvert, generally, the allegation in the complaint, but he must do it issuably. Upon these pleadings, on the trial, who is to begin; and what are the plaintiffs to prove? It would be preposterous for them to prove the law,

and then call on the defendant to show how they had lost title. Nor should the defendants, after the people have set out their title as far as they can, keep the plaintiffs in the dark as to their defence. Certainly this, as we have shown, is not allowed in England. (*And see the late case of the Attorney General* v. *Donaldson,* 10 *M. & W.* 117.) *Attorney General* v. *Lord Eardley and others,* (8 *Price,* 39,) was pressed at bar. That was an information against Lord Eardley as owner and occupier, and the others as occupiers, for an account of titheable matter, which it was said they had taken from lands that had been drained in time of Charles 2d, and had since yielded titheable matter, and which were alledged to be extra-parochial, and therefore the tithes belonged to the king. Part of the defendants insisted that the king was barred by the lapse of 60 years. The crown, to prove they had been in charge, relied upon the fact that, in the accounts of successive auditors of extra-parochial tithes, they, for more than 60 years, had been returned *"nil."* I do not consider this case against the plaintiffs. The pleadings set out the rights of the parties, and the attorney general evidently supposed that merely showing the lands on the books in the exchequer, although nothing had been received from them, was sufficient. That placed them " duly in charge." (17 *Vin.* 221. 1 *Tom. Dic.* 346.) And again, tithes, presumptively, belong to the church. (*Slade* v. *Drake, Hob.* 296.) And the king, not as a layman, but as *persona mixta,* is entitled, *jure coronæ* to those extra-parochials. That is, not within any parish, as forests and the like. (*Bish. of Winchester's case,* 2 *Co. R.* 44, *a.* 2 *Inst.* 647. *Att'y Gen.* v. *Eardley, supra.*) The case would have been very different, if he had been the " original and ultimate" owner of all the tithes in the kingdom. This authority, therefore, is not in conflict with those already cited, in cases of intrusion; and if it were, would not overrule them.

Under our present system of pleading, I think both answers insufficient:

There must be judgment for the plaintiffs; with leave to amend on terms.